The CITY OF NEW YORK, Appellant,

v.

The NEW YORK TELEPHONE COM-PANY, Appellee.

GRASSROOTS ACTION INC. & John B. O'Sullivan, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

NEW YORK TELEPHONE COMPANY, Appellee.

Nos. 2–1, 2–2.

Temporary Emergency Court of Appeals.
June 30, 1972.

Alexander Gigante, Jr., Asst. Corp. Counsel (J. Lee Rankin, Corp. Counsel and Peter C. Demetri, Garden City, N. Y., on the brief), for appellant, the City of New York.

Mark Alan Siegel, New York, for appellants, Grassroots Action Inc., and others.

Lawrence E. Walsh, New York City (Davis, Polk & Wardwell, Philip C. Potter, Jr., Guy M. Struve, Robert S. Snyder, G. Wallace Bates, Edward L. Friedman and Raymond F. Scully, New York City, on the brief), for appellee.

Before TAMM, Chief Judge, and HASTIE and CHRISTENSEN, Judges.

TAMM, Chief Judge.

Appellants, the City of New York, Grassroots Action Inc., and John B. O'Sullivan, initiated suit against the New York Telephone Company in the district court on February 8 and 10, 1972, asserting violation of the Econom-

ic Stabilization Act of 1970,[1] as amended in 1971,[2] seeking declaratory and injunctive relief against an increase in the Company's New York intrastate rates approved by the New York State Public Service Commission on January 17, 1972, which were then under active review by the Price Commission. Despite allegations of failure to comply with the Price Commission's procedural regulations,[3] the district court, 339 F. Supp. 198, on March 1, 1972, dismissed both complaints holding that appellants were required to submit their contentions initially to the Price Commission. This appellants did not do. On March 30, 1972, the Price Commission gave final approval to the Company's rate increase.[4] The instant appeals raised two questions. First, were appellants required to make their submission in the first instance to the Price Commission? Second, did the Company comply with the Commission's procedural regulations? Resolving the initial question adversely to appellants, we pretermit consideration of the latter, and accordingly affirm the judgment of the district court.

## I. Exhaustion of Administrative Remedies Required

The doctrine of exhaustion of administrative remedies is a well respected tradition with a sound foundation in logic and the law which we, although a court of recent origin, must nontheless respect. The doctrine provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.[5] As the Supreme Court indicated in McKart v. United States,[6] the policy underlying the exhaustion doctrine is "the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it

1. Pub.L. No. 91–379, 84 Stat. 799.

2. Pub.L. No. 92–210, 85 Stat. 743.

3. Regulation § 300.16 of the Price Commission which has been amended on several occasions is the subject of this dispute. Appellants urged that an order of the New York State Public Service Commission made on February 1, 1972, which approved appellee's detailed tariff revisions, rather than an order of the New York Commission made on January 17, 1972, which authorized appellee's overall increase in revenues, was the final agency order approving the increase which was required to be filed with the Price Commission pursuant to amended § 300.16(j). In addition, they contended that a certification of the New York Commission, contained in its January 17, 1972 order, failed to state the former price, the new price and the percentage increase, as required by amended § 300.16(e)(1), as to each of the thousands of individual new rates contained in the detailed tariffs approved

by the New York Commission's order of February 1, 1972. Appellants have not, nor do they now, challenge the validity of these regulations. They do, however, challenge the Commission's interpretation of them.

4. The Commission's final approval came after the district court's dismissal of the instant suit. There is a judicial action now pending from this final order in the Southern District of New York. It would be inappropriate for us to rule on the final order of the Commission, not now in the record before us. The orderly review contemplated by Congress—Price Commission to District Court to the Temporary Emergency Court—should not be disturbed in the instant case.

5. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

6. 395 U.S. 185, 193–194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages."

The *raisons d'etre* for the exhaustion doctrine enunciated in *McKart* apply with full force to the instance case. Judicial review is surely hindered by the failure of the litigant to give the agency an opportunity to make a factual record, exercise its discretion or apply its expertise. The Commission is confronted with difficult tasks which require considerable specialized acumen. For example, in the instant case, the Commission is forced to strike a delicate balance between the need for communications service to the public and the impact of a rate increase upon general price levels in light of national economic policies. Moreover, agency expertise is particularly useful here since appellants seek an interpretation of a procedural rule adopted by the Commission itself. It is well established that agency input is extremely helpful in interpretation of its own regulations.[7] Furthermore, the statute itself explicitly requires the Commission to "establish procedures which are available to any person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from such rules, regulations, and orders."[8]

Other policy reasons similarly require application of the exhaustion doctrine in this case. Appellants initiated suit at a time when Commission action was still pending. Notions of judicial economy properly precluded the learned district judge from intervening when no harm was imminent[9] and when no adverse decision had yet emanated from the Commission. In effect, appellants' complaints may well have been rendered academic. It is axiomatic that with certain exceptions not applicable here, judicial review can only occur after a final order. Concepts of administrative autonomy also require that the Commission be given an opportunity to discover and correct its own errors. In this respect we have noted in our cases to date a healthy trend towards amendment of regulations when error or oversight has been pointed out to the Commission. Such autonomy lends itself to prompt, consistent price control policies which are essential to the administration of a nationwide program of price control. Finally, frequent deliberate skirting of the Commission may well result in an erosion of effectiveness and public confidence in the Commission which we must recall is a "collaborative instrumentalit[y] of justice."[10]

With an eye tempered by historical perspective, we note that administrative exhaustion was also required under the

---

7. Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (Emergency Price Control Act of 1942).

8. § 207(b), 85 Stat. 747.

9. The Commission sought to protect telephone users against potential monetary loss in the event the rate increase should be limited, rescinded, reversed or modified. In order to do this, the Commission directed appellees to do two things:
   (1) Deposit the difference between the amounts collected by defendant under the tariffs which became effective on February 3, 1972, and the amounts which would have been collected under the pre-February 3, 1972 tariffs in an escrow account for possible refund to subscribers with 7% interest or for such other disposition as the Price Commission may order; and
   (2) Reduce the rates for coin telephone calls and hotel guest calls to the pre-February 3, 1972 levels as soon as the necessary rearrangements can be made, but not later than February 23, 1972, because such calls are not readily subject to refund in case a refund should be found necessary.

10. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

1942 and 1950 price stabilization statutes. Although that statutory framework differed from the present one, the policy reasons expressed for requiring exhaustion under those statutes are equally applicable here.[11]

In addition to the foregoing policy reasons for application of the exhaustion doctrine, Congress itself clearly indicated the need for fast consistent decisions with the Commission permitted maximum flexibility. Premature interruption of the administrative process would be in contravention of this Congressional mandate. For example, the Senate Report accompanying the Amendments of 1971 states that "[t]he judicial review provision has been written with several important principles in mind: (1) *speed* and *consistency* of decisions in cases arising under the Act, (2) *avoidance of any breaks or stays* in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program."[12] The testimony of the Secretary of the Treasury before a House committee clearly indicates that the draftsmen of the 1971 amendments intended exhaustion of administrative remedies as a prerequisite to judicial review. He testified that "[e]ven though the effective review which we propose to establish will winnow out a significant number of protests, inevitably a sizable number of disputes will go to the courts for *further* review."[13] The Secretary's remarks were echoed by an Assistant Attorney General who stated that "[t]here can be no thought of depriving a person aggrieved by the program of full access to the courts for adjudication of his rights. *It is expected that this review process will proceed first through the administrative review steps provided by the agency regulations.* When these steps are exhausted, the aggrieved person may then proceed into a Federal district court for declaration of his rights and obligations."[14]

Clearly then, in light of the policy considerations and the legislative history, exhaustion is required in the context of this proceeding unless we find the administrative remedy provided inadequate.[15] It is to this end which our inquiry now turns.

II. *The Administrative Remedy is Adequate*

In surveying the adequacy of the administrative remedy it will facilitate matters to view the present Economic Stabilization Act in the context of its predecessors—the Emergency Control Act of 1942 and the Defense Production Act of 1950. Under those statutes aggrieved parties developed factual issues before an administrator in "protest

---

11. Yakus v. United States, 321 U.S. 414, 431–436, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Saunders Petroleum v. Bowles, 152 F.2d 112, 119–120 (Em.App.1945); Bowman v. Bowles, 140 F.2d 974, 977 (Em.App.1944); Safeway Stores, Inc. v. Brown, 138 F.2d 278, 279–280 (Em.App. 1943).

12. S.Rep.No.92–507, 92d Cong. 1st Sess. 10, U.S.Code Cong. & Admin.News 1971, p. 2292 (emphasis supplied).

13. Testimony of John B. Connally, Secretary of the Treasury, Hearings on H.R. 11309 Before the House Comm. on Banking and Currency, 92d Cong. 1st Sess. 314 (1971) (emphasis supplied).

14. Written memorandum of L. Patrick Gray III, Assistant Attorney General, Hearings on S. 2712 Before the Senate Comm. on Banking, Housing and Urban Affairs, 92d Cong. 1st Sess. 93 (1971) (emphasis supplied).

15. We find no merit in appellant's contention that they are not seeking to enjoin Commission action and therefore should not be required to exhaust its administrative remedies. It is clear that the practical effect of what appellants seek would necessarily nullify the Commission's approval of the rate increase. Furthermore, we find none of the well-known exceptions to the exhaustion rule applicable here.

proceedings." [16] Appeal would then lie from the "protest proceedings" to the Emergency Court of Appeals with the district courts relegated to a *de minimis* role.[17] Under the present scheme, Congress, apparently desirous of avoiding a burgeoning bureaucracy and hopeful of a cooperative spirit in the business community, shifted some of the emphasis from the administrator to the district court in the development of factual issues.[18] No longer is a "protest proceeding" required before an administrator; the district court is now accorded a greater role; and the proper appellate route is now from the Commission to the district court to the Temporary Emergency Court of Appeals. However, in drafting the present statutory framework Congress did not intend, nor shall we permit, the administrative process to be a hollow exercise in futility. The schematic change from the previous statutes was merely a shift in emphasis, not an abdication of the concept of fair, adequate administrative proceedings.

Section 207 of the Amendments is the fountainhead upon which Congress intended the Commission to rely. In pertinent part it provides as follows:

> (b) Any agency authorized by the President to issue rules, regulations, or orders under this title *shall*, in regulations prescribed by it, establish procedures which are available to *any* person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from, such rules, regulations, and orders. If such person is aggrieved by the denial of a request for such action under the preceding sentence, he may request a review of such denial by the agency. The agency *shall*, in regulations prescribed by it, establish appropriate procedures, including hearings where deemed advisable, for considering such requests for action under this section.

> (c) *To the maximum extent possible,* the President or his delegate shall conduct formal hearings for the purpose of hearing arguments or acquiring information bearing on a change or a proposed change in wages, salaries, prices, rents, interest rates, or corporate dividends or similar transfers, which have or may have a significantly large impact upon the national economy, and such hearings *shall* be open to the public except that a private formal hearing may be conducted to receive information considered confidential under section 205 of this title (emphasis supplied).

The legislative history behind these provisions illustrates the concern of Congress that the administrative process must be fair and adequate. The comments of L. Patrick Gray III, Assistant Attorney General, are noteworthy in this respect.

> We recognize that there must be some form of meaningful administrative review in a program of this type.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> . . . Public support for this program will be contingent upon the assurance that individual protests over rulings and interpretations and requests for exemptions will be handled seriously, even-handedly and objectively.
>
> . . . Sound administration requires that as many problems as possible be solved at the agency level in

---

16. Emergency Price Control Act of January 30, 1942, Ch. 26, § 203, 56 Stat. 31; Defense Production Act of September 8, 1950, Ch. 932, § 407, 64 Stat. 807.

17. District courts were only authorized to stay enforcement proceedings while complaints were filed in the Emergency Court and protests were filed with the Administrator.

18. *See* Nathanson, Price-Control Standards and Judicial Review—An Historical Perspective, 18 Practical Lawyer 59, 70 (1972).

order to avoid costly litigation in the courts. Action at the agency level must be as thorough as possible so that cases which do go into court can be tried on the record rather than by *de novo* fact finding proceedings initiated by the district court in the asserted interest of due process.[19]

The Senate asserted that it "expects and intends the review procedures described by Assistant Attorney General Gray will be fully implemented."[20] The House similarly warned "that adequate safeguards must be furnished the public to prevent arbitrary, capricious or otherwise unreasonable actions by those responsible for implementing the provisions of this Act."[21]

The gnawing concern of Congress over meaningful administrative procedure has been channeled into regulations promulgated by the Commission.[22] For example, under section 300.506 of the Price Commission's regulations, in effect at the time suit was initiated,[23] "[a]ny person who show[ed] that he ha[d] a direct interest in any application for a price increase" was permitted to "submit written data, information or views to the Price Commission with respect to that application. . . ." The Commission was required to consider such submissions. Furthermore, allaying any possible doubt, the General Counsel of the Price Commission informed appellants by letter dated February 15, 1972, that any person may submit to the Commission written statements, requests for action, etc., with regard to any pending price application, any order issued by the Commission, or question of interpretation of the Commission's regulations. Although these

avenues were open to appellants, they chose not to use them. We hold they erred in not doing so.

It is clear to us that there is an adequate administrative remedy here which must be pursued initially. Should we find the administrative remedy inadequate in the context of a particular factual situation or circumstance, we shall not hesitate to speak up. As the Congress has built the Economic Stabilization skeleton, and as the Executive has put some regulatory meat on its bones, so we too must fulfill our constitutional duty of breathing life into this golem-like creature, for it is all too clear that judicial review of esoteric questions involving the economy of a nation can only be meaningful where the administrative review is meaningful.

Affirmed.

HASTIE, Judge (concurring in result):

In my view the controversy litigated in these cases is now moot. I would dispose of the appeal on that ground without undertaking to discuss the doctrine of exhaustion of administrative remedies which we may have to consider and apply in other cases and situations arising out of the Economic Stabilization Act, as amended.

The basic issue in these cases is whether New York Telephone Co. complied with a procedure duly prescribed under the Economic Stabilization Act, as amended, which enables a public utility to increase rates without affirmative approval by the federal Price Commission. That procedure requires the approval of

---

19. *Memorandum, supra,* note 14 at 92. The memorandum sets forth an explanation why the Congress should exempt the Economic Stabilization Act from most of the Administrative Procedure Act requirements, a position which the Congress eventually adopted, although not without considerable debate.

20. S.Rep.No.92–507, *supra,* note 12 at 8, U.S.Code Cong. & Admin.News 1971, p. 2290.

21. H.Rep.No.92–714, 92d Cong. 1st Sess. 7.

22. 6 C.F.R. §§ 305.1–305.62, 37 Fed.Reg. 1008 (January 21, 1972).

23. 6 C.F.R. § 300.506, 36 Fed.Reg. 23980 (December 16, 1971).

any proposed increase by the appropriate state regulatory agency and the submission of the proposal thereafter to the Price Commission. If the Commission does not act within ten days after that submission, the public utility is free to put the new rates into effect.

New York Telephone Co. purported to comply with the above outlined procedure and then increased its rates. The dispute in this case is whether the data submitted to the Price Commission ten days or more before the rate increase was sufficient to comply with the controlling regulations.

However, since the district court decided this case, the Price Commission has considered the increased rates and has affirmatively and formally approved them. Moreover, that action of the Price Commission is now being challenged in a separate suit in the district court by the parties that are plaintiffs in these suits. It also is relevant that no claim for roll back or refund on account of overcharges made before affirmative Price Commission approval of the new rates is presented in this case.

These facts cause me to believe that the present dispute is moot.