**CONSUMERS UNION OF UNITED STATES, INC., et al., Plaintiffs-Appellants,**

v.

**COST OF LIVING COUNCIL et al., Defendants-Appellees,**

**The Business Roundtable, Defendant-Intervenor.**

**No. DC–17.**

Temporary Emergency Court of Appeals.

Jan. 11, 1974.

Rehearing Denied Feb. 4, 1974.

Certiorari Denied May 13, 1974.

See 94 S.Ct. 2387.

5.  House Report No. 963, 1961 U.S.Code Cong. and Admin.News, pp. 2591, 2597.

Alan M. Silbergeld, Consumers Union, Washington, D. C. (Peter H. Schuck, Consumers Union, Washington, D. C., and of counsel, Lobel, Novins & Lamont, Washington, D. C., with him on the brief), for appellants.

James Elkins, Atty., U. S. Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson and William White, Attys., U. S. Dept. of Justice, with him on the brief), for the Government-appellees.

John G. DeGooyer, Hamel, Park, McCabe & Saunders, Washington, D. C., for intervenor.

Before TAMM, Chief Judge, and HASTIE and ESTES, Judges.

ESTES, Judge.

This is an appeal under Section 211 of the Economic Stabilization Act of 1970, as amended (the Act), by plaintiffs, Consumers Union of United States, Inc., William D. Hathaway, and Peter J. Petkas, from orders of the United States District Court for the District of Columbia denying plaintiffs' motion for summary judgment and granting the motions for summary judgment made by the defendants, the Cost of Living Council (CLC), Dr. John T. Dunlop, its Executive Director, and William N. Walker, its Acting Deputy Director, and by defendant-intervenor, The Business Roundtable.

On July 17, 1973 plaintiffs filed their complaint in the district court seeking a declaratory judgment that certain of the CLC's public disclosure regulations, 6 C. F.R. §§ 102.50 et seq., were illegal, and seeking an injunction rescinding those regulations and requiring the issuance of new regulations which comply with Section 205 of the Act. On August 22, 1973 plaintiffs filed an amended complaint to reflect the fact that Phase IV regulations had replaced the Phase III regulations challenged by the original complaint. On October 15, 1973 the motion of The Business Roundtable to intervene as a defendant was granted with defendants' approval but over plaintiffs' objection. The district court granted the defendants' and the defendant-intervenor's motions for summary judgment on November 2, 1973. Plaintiffs filed their notice of appeal with this Court on November 6, 1973.

Three principal issues are involved in this appeal. One of these issues, which has not been raised by any of the parties or the court below, will be considered first.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

Part 102 of the CLC's regulations is entitled "Public Access to Records." Plaintiffs are challenging the legality of those parts of Subpart F (6 C.F.R. §§ 102.51–102.56) of Part 102 which declare what information submitted to the CLC shall or shall not be subject to public disclosure. Subparts B and C provide an administrative procedure whereby requests for information may be filed with the CLC's Assistant Director for Public Affairs. Subpart E provides that adverse determinations made by the Assistant Director may be appealed within 30 days to the Director of the CLC.

In this case no information was requested of the CLC until August 17, 1973, one month after the original complaint had been filed in the district court. On that date the CLC Assistant Director received from Mark Silbergeld,

an attorney for plaintiff Consumers Union, a letter request for certain information. The reply of the Assistant Director, received by the plaintiff on October 19, 1973, summarized the provisions of Subpart F and pursuant thereto refused to make available most of the information sought. On November 6, 1973, the same day that a notice of appeal was filed with this Court from the November 2, 1973 district court orders, Consumers Union wrote to the CLC Director, Dr. John T. Dunlop, to appeal from the October 19, 1973 determination by the Assistant Director. The record does not reflect that Dr. Dunlop has made a determination of the administrative appeal.

This Court follows the well-known rule requiring exhaustion of administrative remedies. City of New York v. New York Telephone Co., 468 F.2d 1401 (T.E.C.A.1972).[1] Clearly, plaintiffs did not exhaust their administrative remedies before filing the action below. Strict application of the doctrine would require us to dismiss this case. In determining whether to apply the doctrine, it is appropriate to consider whether the policies that give rise to the doctrine would be furthered by its application to the circumstances of the case, and whether exceptions to the rule are present.

One reason often given for requiring exhaustion is that after a dispute has been determined by all available administrative procedures, the issues in dispute between the parties will be better framed and thus more susceptible of judicial determination. In the present dispute, however, there are no factual issues in dispute, and the question involved is a purely legal one as to whether the CLC's public disclosure regulations are in violation of Section 205 of the Act. That question was adequately framed by the pleadings and exhibits in

the district court, which ruled for the defendants on their motions for summary judgment. Since there is no question as to the nature of the issues in dispute between the parties, this policy reason behind requiring exhaustion does not favor application of the doctrine to this case.

A second reason for the doctrine is that requiring exhaustion will insure that the agency is given an opportunity to apply its particular administrative expertise to the question being reviewed. This policy is usually applied to the determination of technical factual disputes or to the determination of disputes involving the agency's interpretation of its own regulations or orders. In both situations the reviewing court would be aided by having the informed opinion of the agency. In this case, however, there is neither a technical factual dispute nor a dispute involving the CLC's interpretation of its orders or regulations. Instead, as mentioned above, the dispute is a legal one only, and there is no question as to the interpretation of the CLC's regulations. Those regulations are clear; the dispute is whether they are in excess of the authority given by Section 205 of the Act. We find that this policy reason for exhaustion would not be furthered by application of the doctrine to these circumstances.

A third reason for requiring exhaustion is that if, through the administrative review process, the agency is made aware of the faults of its policies, it may change them on its own volition, thus removing the need for judicial review or making moot a pending judicial proceeding. "In this respect we have noted in our cases to date a healthy trend towards amendment of regulations when error or oversight has been pointed out to the [agency]." City of New York v. New York Telephone Company, 468 F.2d 1401, 1403 (T.E.C.A.1972). Were it not for the fact that plaintiffs'

---

1. "Clearly then, in light of the policy considerations and the legislative history, exhaustion is required in the context of this proceeding unless we find the administrative

remedy provided inadequate." 468 F.2d at 1404. "Furthermore, we find none of the well-known exceptions to the exhaustion rule applicable here." Id. n. 15.

views as to the illegality of these regulations have been repeatedly made known to the CLC since May 30, 1973, we might consider this an appropriate case for the application of this policy. On May 8, 1973 the CLC issued its proposed regulations for the implementation of Section 205, inviting interested persons to participate in the proposed rule making by submitting written data, views, or comments. On May 30, 1973 plaintiff Hathaway filed comments contending that the proposed regulations were illegal in violation of Section 205. On May 29, 1973 and June 4, 1973 plaintiff Petkas filed comments of the same import. On May 18, 1973 the CLC announced the scheduling of a hearing for June 6, 1973, for the purpose of hearing comments on the proposed regulations by interested parties. Plaintiffs Hathaway and Petkas attended the hearing and testified in opposition to the proposed regulations. On June 15, 1973 the CLC promulgated as final regulations the proposed regulations which had been the subject of the hearings and comments above. Under these circumstances it would not appear likely that the CLC would now decide to replace its regulations because of plaintiff Consumers Union's administrative appeal.

Thus we decide that under the exceptional circumstances of this case the doctrine of exhaustion of administrative remedies does not prevent our consideration of this appeal. We emphasize, however, that in the usual case arising under the Economic Stabilization Act, policies favoring exhaustion will no doubt apply, and plaintiffs should be extremely wary of commencing actions in court when an adequate administrative remedy lies open to them but has not been pursued.

## WHICH FIRMS MUST DISCLOSE?

█ Under Phase III of the Economic Stabilization Program, quarterly reports to the CLC were required of all firms with annual sales or revenues of $250 million or more. [6 C.F.R. § 130.-21(b)]. Public disclosure was required of all such firms. (6 C.F.R. § 102.50). Under Phase IV regulations, the number of firms required to report has been extended to include all firms with annual sales or revenues of $50 million or more (6 C.F.R. § 150.161), but the regulations retain the Phase III requirement that public disclosure applies only to those firms with annual sales or revenues of $250 million or more. (6 C.F.R. § 102.-51). Plaintiffs contend that this Phase IV requirement is in violation of Section 205(b)(1), which provides in relevant part that "Any business enterprise subject to the reporting requirements under section 130.21(b) of the regulations of the Cost of Living Council in effect on January 11, 1973, shall make public any report. . . ."

The public disclosure section in question, Section 205 of the Act, was added to the statute during Phase III as a part of the Economic Stabilization Act Amendments of 1973, P.L. 93–28, April 30, 1973. Thus Congress considered the question of public disclosure in light of which firms were required under Phase III to report and to disclose, and explicitly required that the firms which would be required to disclose under the new Section 205 were those which were required to file quarterly reports "under section 130.21(b) of the [CLC] regulations in effect on January 11, 1973 . . .," that is, those with annual sales or revenues of $250 million or more. Plaintiffs would have us find that Congress did not mean what it said, but meant instead that disclosure was to be required of whichever firms were required to report to the CLC by the successor regulations to the Phase III regulation mentioned in Section 205 of the statute. They would have us require the CLC to issue new regulations requiring public disclosure of all firms of $50 million or more annual sales or revenues, since those firms are now required under Phase IV to file quarterly reports to the CLC.

We find it unnecessary to consider this issue at length. Section 205(b)(1) on its face clearly and specifically calls

for disclosure by those businesses that were required to report to the CLC by "section 130.21(b) of the regulations of the Cost of Living Council in effect on January 11, 1973." The statute plainly calls for disclosure only by firms of more than $250 million annual sales or revenues, and the CLC Phase IV regulations being challenged do likewise.

## WHAT INFORMATION MUST BE DISCLOSED?

██ Plaintiffs' principal contention below, and on this appeal, is that specified parts of the CLC's regulations (Subpart F of Part 102, 6 C.F.R. §§ 102.51–102.56), determining what information reported to it is subject to public disclosure, are illegal because they are contrary to the requirements of Section 205(b)(3) of the Act. Section 205(b)(3) provides:

> Immediately upon enactment of this subsection, the President or his delegate shall issue regulations defining for the purpose of this subsection what information or data are proprietary in nature and therefore excludable under paragraph (2), except that such regulations may not define as excludable any information or data which cannot currently be excluded from public annual reports to the Securities and Exchange Commission pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934 by a business enterprise exclusively engaged in the manufacture or sale of a substantial product as defined in paragraph (1). Such regulations shall define as excludable any information or data which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus of the business enterprise.

This subsection thus operates as a limitation on the discretion of the CLC, granted by Section 205(b)(2), to exclude from public disclosure information or data that is proprietary in nature. Any information submitted to the CLC must fall into one of the three statutory categories: (1) information concerning trade secrets, etc., which must be excluded from public disclosure, (2) information which would have to be reported to the Securities and Exchange Commission (SEC) by a single product-line or single service-line company, which cannot be excluded from public disclosure, and (3) all other information, which the CLC may or may not define as proprietary and thus excludable from public disclosure.

The CLC's regulations require the filing of quarterly reports on its forms CLC–2 (Phase III) or CLC–22 (Phase IV). The forms must contain the information specified therein. For the purposes of public disclosure, Section 102.-54(a)(3) provides that each firm shall submit with its quarterly report four extra, or "public disclosure" copies from which has been omitted all information or data defined as proprietary and excludable from public disclosure by Sections 102.55 or 102.56. Section 102.-54(c) provides that interested persons may examine the public disclosure copies of the reports at the appropriate Internal Revenue Service District Office.

Sections 102.55 and 102.56 specify which items on forms CLC–2 and CLC–22 are proprietary (excludable) information. A reading of those sections will reveal that the CLC has defined as proprietary all items which are, or are based on, annual sales or revenues, net sales, operating income, and sales by product line or service line. None of the parties disputes that such accounting items are required to be reported to the SEC. However, as the CLC points out in Section 102.55(a)(2), its definitions for net sales and operating income "are not the same as those used for SEC purposes because they exclude revenues from foreign operations, public utilities, farming activities and insurance activities. Since such general financial data, thus more narrowly defined, is not required for SEC purposes, it can be excluded from the public annual reports to the SEC and is, therefore, defined as proprietary data. . . ." Annual

sales or revenues is also defined as proprietary, on the basis that the CLC's "special definition of annual sales or revenues results in a figure not disclosed in the SEC Form 10–K." Section 102.-55(a)(1).

This dispute thus focuses upon the meaning of that clause of Section 205(b)(3) of the Act which prohibits the CLC from defining as proprietary and excludable from public disclosure "information or data which cannot currently be excluded from public annual reports . . . " to the SEC. Plaintiffs contend that the words "information or data" mean "types of information or data," that since annual sales or revenues, net sales, and operating income are required by the SEC, then the CLC is bound by the statute to define such items as nonproprietary information, and that the statutory command applies regardless of the variation in defining the items by the CLC and the SEC. The actual effect of the defendants' argument, although disclaimed by intervenor, is that the words "information or data" mean "numerically identical information or data." Defendants contend that since, for example, the net sales figure reported on the CLC form will not be the same figure as the net sales figure reported to the SEC, then the CLC form net sales figure is not SEC data, and the CLC is not prohibited by the statute from defining its net sales figures as proprietary and excludable from public disclosure. Defendants also argue that the CLC was bound to define very narrowly what information is nonproprietary because Section 205(a) makes reference to 18 U.S.C. § 1905, which provides criminal penalties for any officer of the government who "discloses, or makes known in any manner or to any extent not authorized by law" any information required to be filed with an agency. The plaintiffs respond by noting that in this case the defendants were not only authorized to disclose the information, but were forbidden by the statute from withholding it. Further, they note that Section 205(a) specifically excepts Section 205(b) from the reference to the applicability of 18 U.S.C. § 1905.

■ Although both plaintiffs and defendants have brought certain portions of the legislative history to our attention, we have found, and the parties do not argue otherwise, that the legislative history as a whole is not clearly dispositive of the problems outlined above. The Congressional purpose in amending Section 205 was to grant access by interested members of the public to financial data on CLC reporting forms so that the public could better monitor the degree of compliance by business with the Economic Stabilization Program. The amendment's sponsor and principal supporters stated that it would give the public a basis for making independent judgments on reporting companies' compliance with the rules of the program, and that it would put these companies on notice that price increases above 1.5 percent on any substantial product would subject them to public scrutiny. S.Rep.No.93–63, Senate Committee on Banking, Housing and Urban Affairs, 93d Cong., 1st Sess. 8 (1973). Plaintiff Senator Hathaway was the author of the original amendment, which is now Section 205(b)(1). Standing alone this amendment would apparently have made almost all information reported to the CLC subject to public disclosure. The Senate then adopted an amendment, now Section 205(b)(2), which was offered by Senator Tower. This amendment provides that *proprietary* information concerning income, profits, losses, and costs could be excluded from public disclosure. Senator Hathaway proposed another amendment, which was adopted and is now Section 205(b)(3). Cong.Rec., March 20, 1973, S 5314. As discussed above, it is Section 205(b)(3) that provides which information can or cannot be defined as proprietary.

■ The CLC argues that its regulations permit public access to sufficient information to monitor compliance with the program. The Business Roundtable

argues that to require the public disclosure of the business information sought by plaintiffs would give an unfair competitive advantage to a reporting firm's foreign and domestic competitors who are not required to report. Neither argument is responsive to the issue of whether the public disclosure regulations meet the terms of the statute requiring their promulgation. Whether the public is provided sufficient information to monitor compliance, and whether some adverse competitive advantages may result, are public policy considerations within the usual province of the Congress.[2]

■ CLC gives no reasonable explanation related to the objectives of the Act,[3] particularly Section 205 forbidding the CLC to "define as excludable *any* [SEC] information or data . . .," as to *why* the CLC decided that the information in dispute was not SEC data and therefore should be withheld from public disclosure. The only reasons advanced are that the CLC and SEC definitions are not the same, thus the figures reported will not be the same, and that, therefore, the CLC contends, it may define the information as proprietary because it is not SEC data. We are not told on what basis the CLC decided that *Congress* intended public disclosure only of information or data which has been defined identically by both agencies. While there are generally recognized meanings for the accounting terms "sales," "net sales," "operating income," etc., we think it is indisputable that different companies, and different government agencies, will use slightly varying methods of computing these figures to meet the needs of the companies or agencies. Indeed, it is probably the rule, rather than the excep-

tion, that one will find minor definitional differences between businesses and between agencies. Congress surely knew this when it enacted Section 205(b)(3), and, therefore, we find it unrealistic to assume, as defendants' argument would have us do, that Congress intended "information or data" to mean "numerically identical information or data." Instead, we think that when Congress, with knowledge that the SEC requires public disclosure of, for example, net sales figures reported to it, enacted Section 205(b)(3) forbidding the CLC to define as proprietary any information required to be reported to the SEC, Congress intended that any net sales figures reported to the CLC could not be defined as proprietary and excludable.

The defendants' position on this issue results in an anomaly. While Congress used the mandatory language "may not define as excludable," which would seem to leave no discretion, the CLC's rationale would permit it to avoid completely the effect of this provision of the statute by simply using definitions which differed from those of the SEC. We think Congress intended these words to have an effect, and that that intended effect was to withhold from the CLC any discretion to exclude from public disclosure business information required by the SEC.

■ Defendants argue that they were required to define very narrowly what information is nonproprietary because Section 205(a) makes reference to 18 U.S.C. § 1905, which provides criminal penalties for any officer of the government who "discloses, or makes known in any manner or to any extent not authorized by law" any information re-

2. In Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), cited in Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the Supreme Court stated: "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

3. Section 202 states that the objectives are "to stabilize the economy, reduce inflation, minimize unemployment, improve the Nation's competitive position in world trade, and protect the purchasing power of the dollar. . . ."

quired to be filed with an agency. While we understand that the CLC is conscientiously endeavoring to release only that information which it is authorized to release, in this case the CLC was not only authorized to release the information, it was forbidden by Section 205(b)(3) from defining the information as proprietary and preventing its release. Furthermore, the CLC apparently overlooked the fact that the reference to 18 U.S.C. § 1905 in Section 205(a) is preceded by the words "Except as provided in subsection (b) . . . ." We hold that for these reasons the members of the CLC have no need to fear prosecution under 18 U. S.C. § 1905 for defining information reported to the CLC as nonproprietary when the statute required them to do so.

■ Having found that the CLC regulations defining proprietary information, 6 C.F.R. § 102.55(a)(1), (2), and (4); 6 C.F.R. § 102.56(a)(1), (2), and (4), are illegal because in contravention of Section 205(b)(3) of the Act, we turn to the question of the relief to be given the plaintiffs. Considering the emergency nature of the stabilization program being administered by the defendants, we think it is not inappropriate to consider the impact that an invalidation of these regulations might have on administration. Fortunately it appears that in this case there will be very minimal, if any, disruptive effects caused by such a determination. The CLC will be required to issue new regulations in conformance with this opinion.[4] Other than that, however, there will be no additional "red tape" for the defendants, reporting businesses, or the members of the public. The reporting businesses will continue to submit public disclosure copies of the reports, and the public will examine them as it has before. The only difference will be that the CLC, through its new regulations, will have reduced the number of items that may be omitted from the public disclosure copies.[5]

Accordingly, it is ordered that this cause be remanded to the trial court for further proceedings in accordance with this opinion; that the trial court's orders denying plaintiffs' motion for summary judgment and granting defendants' and intervenor's motions for summary judgment be vacated, and that plaintiffs' motion for summary judgment be granted only to the extent expressly indicated by this opinion; and that an injunction be issued ordering the CLC to prepare and issue new regulations in accordance with Section 205(b)(3) of the Act, as interpreted herein, to replace the existing Sections 102.55(a)(1), (2), and (4), and 102.-56(a)(1), (2), and (4) of its regulations, defining proprietary information, as soon as is practicable under the circumstances.

So ordered.

4. For the guidance of the court below and the parties, the above sections of the regulations (and their predecessors dealing with form CLC–2) are held illegal insofar as they define as proprietary the information required on lines 7 through 18, line 24 (column c), lines 27 through 33, and lines 35 through 39 of present form CLC–22. Section 205(b)(3) of the Act prohibits the CLC from defining as proprietary any information or data which would in fact be reported to the SEC by a single product-line manufacturer or seller. Slight definitional variances between CLC terms and SEC terms are not sufficient grounds for the CLC to define information as proprietary when that information is of the same nature as that required by the SEC. Unless a reasonable explanation, related to the objectives of the Act, is shown, the CLC may not use definitional variances as a justification for issuing regulations which restrict the effectiveness of Section 205 in furthering public disclosure to insure compliance with the Act.

5. We recognize, however, that for quarterly reports filed after the amendment of Section 205 on April 30, 1973, revised public disclosure copies, prepared in accordance with the regulations to be issued to replace those herein declared invalid, must be made available for examination by members of the public, in accordance with the "Disclosure procedure" prescribed by present 6 C.F.R. § 102.54.