496 F.2d 1324
 ST. MARY'S HOSPITAL OF EAST ST. LOUIS, INC.,
Plaintiff-Counter-defendant-Appellee,
v.
Richard B. OGILVIE, Governor of the State of Illinois, et
al., Defendants-Counterplaintiffs-Appellants.
 No. 72-1827.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 10, 1973.
Decided May 23, 1974.
 
 William J. Scott, Atty. Gen., Robert J. O'Rourke, Asst. Atty. Gen., Chicago, Ill., for appellants.
 Timothy C. Toomey, Chicago, Ill., for appellee.
 Before CUMMINGS, PELL and STEVENS, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from the district court's granting of a preliminary injunction ordering the state to pay Medicaid reimbursements to St. Mary's Hospital in an amount representing a 9.7 percent increase over the prior reimbursement rate.
 
 
 2
 In Illinois, Medicaid is paid by the state to the hospitals on a cost-reimbursement method. St. Mary's Hospital of East St. Louis, Illinois, filed suit under Title XIX of the Social Security Act seeking declaratory and injunctive relief, to enjoin state implementation of new procedures for Medicaid reimbursements. The state filed a counterclaim to recover approximately $927,000 in Medicaid overcharges paid to St. Mary's Hospital dating back to 1966.
 
 
 3
 On February 16, 1972, the district court issued a preliminary injunction ordering the state to reimburse the hospital for Medicaid services at the 1970 rate of $55,24 per patient day. On July 28, 1972, pursuant to a motion by the hospital, the district court amended the preliminary injunction to require reimbursements at the rate of $60.65 per patient day, retroactive to November 1, 1971. This was a 9.7 percent increase over the prior reimbursement rate. The amended injunction was issued without a requirement that St. Mary's post security for the overcharges alleged in the counterclaim. The district court denied the state's motion to vacate, alter, or amend the order of July 28, 1972.
 
 
 4
 The state raises two issues on appeal: (1) the applicability of the Economic Stabilization regulations to the Medicaid reimbursements in question; (2) the necessity of requiring, under Rule 65(c), Fed.R.Civ.P., a security deposit for the overcharges as a condition of granting the preliminary injunction.
 
 
 5
 I. JURISDICTION OF THIS COURT.
 
 
 6
 As a preliminary matter, it must be determined whether this court has jurisdiction over the appeal or whether the appeal properly should have been made to the Temporary Emergency Court of Appeals (T.E.C.A.). The jurisdiction of T.E.C.A. is created by 211(b)(2) of the Economic Stabilization Act of 1970, 12 U.S.C. 1904, which provides:
 
 
 7
 'Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder.'
 
 
 8
 We interpret the phrase 'arising under' as requiring that the allegations of the complaint, not merely the answer, call for the application of the Economic Stabilization Act to the suit. In the absence of such triggering allegations in the complaint, the court of appeals has jurisdiction over the appeal.
 
 
 9
 This interpretation of 211(b)(2) is consistent with interpretations of the same phrase, 'arising under,' in the context of federal-question jurisdiction in the federal courts. In the latter situation, it has long been held that to invoke the jurisdiction of the federal courts on the basis of a claim 'arising under' the Constitution or laws of the United States (28 U.S.C. 1331), the complaint, and not the answer, must be based on those laws or the Constitution. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
 
 
 10
 Moreover, T.E.C.A. itself recently noted in United States v. Cooper, 482 F.2d 1393, 1398 (Em.App. 1973), that 'a loose construction (of 211(b)(2)) is unacceptable in light of the traditional rule that courts of special jurisdiction should strictly construe their statutory grants of jurisdiction.' See also Associated Gen. Contractors of America, Inc. v. Laborers Int'l, Local 612, 489 F.2d 749 (Em.App. 1973).
 
 
 11
 In the present case, the allegations of St. Mary's complaint did not create issues calling for the application of the Economic Stabilization Act. The applicability of the Act was first raised by the state after the preliminary injunction had been issued. In this situation, the case did not 'arise under' the Act and therefore this court has jurisdiction over the appeal.
 
 
 12
 II. APPLICATION OF THE ECONOMIC STABILIZATION REGULATIONS.
 
 
 13
 Title XIX of the Social Security Act establishes the Medicaid program. Specifically, 42 U.S.C. 1396a(a)(13)(D) provides 'for payment of the reasonable cost of inpatient hospital services provided under the plan.' The Economic Stabilization Act authorizes the President to issue orders and regulations to stabilize prices, rents, wages, and salaries. Medicaid reimbursements were specifically frozen under Economic Stabilization regulation No. 305:
 
 
 14
 'Payment schedules established during the base period for medical services provided under the Medicaid program are considered to be prices and are frozen. In effect, then, the Medicaid reimbursements (per unit of service) based on these payment schedules are frozen.' Economic Stabilization Cir. No. 102
 
 
 15
 The Price Commission issued a regulation, effective December 29, 1971, regarding increases in prices of institutional health:
 
 
 16
 'No institutional provider of health services may charge a price in excess of the base price, if the effect of the increase . . . is to-- (2) Increase its aggregate annual revenues . . . at an annualized rate of 6 percent over the amount of its aggregate annual revenues for its last fiscal year, unless the provider has received an exception from the Price Commission . . ..' 6 C.F.R. 300.18 (1973).
 
 
 17
 The district court offered no reason for its finding that the above regulation is inapplicable to its amended order which resulted in a 9.7 percent increase in the Medicaid reimbursement rate. St. Mary's Hospital, in urging that we find the Economic Stabilization regulations inapplicable, has advanced essentially two arguments.
 
 
 18
 First, the hospital argues that the Economic Stabilization Act and accompanying Executive Orders did not expressly authorize the state welfare agencies to deviate from the provisions of Title XIX of the Social Security Act which requires full reimbursement for Medicaid costs. Application of the Economic Stabilization regulations to Medicaid reimbursements, according to St. Mary's would violate Title XIX.
 
 
 19
 We find this argument unpersuasive. In its recent decision, American Nursing Home Ass'n v. Cost of Living Council, 497 F.2d 909 (Em.App. 1974), T.E.C.A. held that there is no conflict between 300.18, as it applies to nursing care homes, and Titles XVIII and XIX of the Social Security Act. We similarly find no conflict between this Economic Stabilization regulation, as applied to a hospital, and the Social Security Act. Under the Economic Stabilization regulations, a hospital could obtain full reimbursement for any Medicaid costs. The regulations only required that a certain procedure be followed when the aggregate annual revenue increased by a designated percentage.[1] Short-term economic controls do not necessarily conflict with more permanent, long-term legislative schemes 'simply because they may impinge or overlap the same sectors of the economy.' Id. at 915. Moreover, the fact that Congress, in the Economic Stabilization Act, did not expressly authorize a deviation from Title XIX is irrelevant. 'If there is no evidence (of either congressional awareness or unawareness), the presumption must be in favor of congressional awareness.' Id. at 916.
 
 
 20
 The second argument presented by the hospital for not applying the Economic Stabilization regulations to it is that St. Mary's Medicaid reimbursements do not fall within the terms of 300.18(c)(2). The hospital's argument is essentially two-pronged: (a) the regulation refers to 'price' increases whereas what St. Mary's is seeking is an increase in reimbursement rates, which are based on costs; (b) even if reimbursement payments are construed as 'prices,' the price increase is regulated only if there is a resulting 6 percent increase in aggregate annual revenues, and the latter increase has not been shown.
 
 
 21
 As to the first prong of this argument, 'price' is defined at 6 C.F.R. 300.5 (1973) as 'any compensation for the sale or lease of any property or services and includes rent, commissions, dues, fees, margins, rates, charges, tariffs, fares, or premiums, regardless of form.' In the commentary on the regulations, 'price' is further explained as including 'a direct price paid as well as a price reimbursed to a provider by a third party payer on a cost basis.' 36 Fed.Reg. 25384 (1971).[2] In the present case, the reimbursements are the compensation which the state pays in exchange for St. Mary's services with respect to Medicaid. The reimbursement rate is, thus, the 'price' paid by the state. The 'price' in this situation simply happens to be statutorily limited to cost.
 
 
 22
 The second prong of St. Mary's argument regarding the wording of 300.18 can also be disposed of by reference to the definitions given in the regulations. St. Mary's is correct in pointing out that to be within 300.18(c)(2), there must be a 6 percent increase in aggregate annual revenues. The revenues referred to, however, are 'aggregate,' not net, so they must be computed without deducting operating costs. Thus, according to the regulation, 'aggregate annual revenues' are computed by:
 
 
 23
 '(1) Taking the sum of all patient service revenues for the year concerned . . . (2) Adding thereto all other operating revenues from services, sales, and activities for the fiscal year concerned . . . and (3) Subtracting from the sum of paragraphs (1) and (2) the amount of the deduction for the year concerned for charity, courtesy, and contractual discounts and allowances for bad debts.' 6 C.F.R. 300.18(a) (1973).
 
 
 24
 In the present case, the Medicaid reimbursements would be included in St. Mary's revenues since we have already determined that these payments represent compensation for patient service. If the district court's order is upheld, St. Mary's would have an increase in aggregate revenues of 9.7 percent. St. Mary's has made no demonstration that it has sufficient 'charity, courtesy, and contractual discounts and allowances for bad debts' to offset this 9.7 percent increase. St. Mary's has only alluded to rising operational costs, which are not deducted in computing 'aggregate annual revenues.'[3]
 
 
 25
 We conclude that the Economic Stabilization regulations do apply to the 9.7 percent increase in the Medicaid reimbursement rate sought by St. Mary's. The district court was, therefore, incorrect in ordering the state to pay reimbursements at the increased rate. Rather, St. Mary's should have followed the administrative procedures set forth in the regulations for receiving an exception.
 
 
 26
 The need to exhaust administrative remedies is particularly strong where the subject matter involved is highly complex, as is the case here. In City of New York v. New York Telephone Co., 468 F.2d 1401 (Em.App. 1972), an action was brought by the city seeking declaratory and injunctive relief against an increase in telephone rates. In denying relief, T.E.C.A. held that the city was required to submit its complaint to the Price Commission before seeking judicial relief. The court noted:
 
 
 27
 'Judicial review is surely hindered by the failure of the litigant to give the agency an opportunity to make a factual record, exercise its discretion or apply its expertise. The Commission is confronted with difficult tasks which require considerable specialized acumen . . .. Finally, frequent deliberate skirting of the Commission may well result in an erosion of effectiveness and public confidence in the Commission which we must recall is a 'collaborative instrumentality of justice." 468 F.2d at 1403.
 
 
 28
 See also McKart v. United States, 395 U.S. 185, 193-195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Anderson v. Dunlop, 485 F.2d 666, 669-670 (Em.App. 1973).
 
 
 29
 III. SECURITY DEPOSIT.
 
 
 30
 The state argues that the district court erred in ordering it to pay Medicaid reimbursements without conditioning the order upon the hospital's giving security for the overcharges alleged in the counterclaim. Since we have found the district court's order regarding the reimbursements to be erroneous, we need not decide whether a security deposit was necessary under Rule 65(c), Fed.R.Civ.P.
 
 
 31
 Accordingly, the preliminary injunction ordering the state to pay Medicaid reimbursements at a rate 9.7 percent higher than the previous rate is reversed, the preliminary injunction is vacated, and the case remanded for further proceedings consistent with this opinion.
 
 
 32
 Reversed and remanded.
 
 
 
 [1]
 The method for obtaining an 'exception' to the 6 percent limitation is specifically set out in Subpart C of 6 C.F.R. 305 (1973). In applying for an exception, St. Mary's could have presented information as to the particular operational costs it had encountered which justified the increased reimbursement rate. One of the central concepts of the control plan is that the program is to be kept flexible through a system of exceptions based on individual-- rather than industry-wide-- costs and profits. See Comment, Administration and Judicial Review of Economic Controls, 39 U.Chi.L.Rev. 566, 575-76 (1972)
 
 
 [2]
 'In interpreting the specific wording of the regulation, the Court must place great weight upon an agency's interpretation of its own regulation.' United States v. Lieb, 462 F.2d 1161, 1166 (Em.App.1972). See also Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); United States v. Electrical Workers, Local 11, 475 F.2d 1204, 1209 (Em.App.1973)
 
 
 [3]
 Even though St. Mary's presumably had patients other than those in the Medicaid category, we note (a) a substantial part of the hospital's services were rendered to Medicaid patients and (b) there is no basis for thinking that St. Mary's claimed cost increases would not have also been reflected in the revenues generated by non-Medicaid patients