**ENERGY COOPERATIVE, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY and James B. Edwards, Secretary, Department of Energy, Defendants-Appellees.**

No. 7–11.

Temporary Emergency Court of Appeals.

Argued Feb. 23, 1981.

Decided Aug. 3, 1981.

Fred W. Drogula, Patricia Blair, Ginsburg, Feldman, Weil & Bress, Washington, D. C., and Anthony E. Cascino, Energy Co-op., Inc., Rosemont, Ill., were on the brief for plaintiff-appellant.

Raphael O. Gomez, Thomas S. Martin, Acting Asst. Atty. Gen., and C. Max Vassanelli, Dept. of Justice, Washington, D. C., and Nancy C. Crisman and Steven A. Schatten, Dept. of Energy, Washington, D. C., were on the brief for defendants-appellees.

Before CHRISTENSEN, LARSON and PECK, Judges.

LARSON, Judge.

In this appeal we are asked to determine whether the district court erred by dismissing the complaint of Energy Cooperative, Inc. (ECI) on the ground that ECI had failed to exhaust its administrative remedies in a timely manner. ECI, a small refiner, filed its complaint in December, 1979, alleging the invalidity of the $.21 per barrel cost acquisition penalty which had been imposed on foreign crude oil under the Entitlements Program from 1976 through 1979. ECI's primary contention was that the rule which imposed the penalty was promulgated without the required notice procedure. The Department of Energy (DOE) moved to dismiss the action on the grounds of laches and failure to join indispensable parties. The District Court raised, *sua sponte*, the exhaustion doctrine in dismissing ECI's complaint.

ECI now asks this Court to find that the district court erred in its application of the exhaustion doctrine to this case and to determine ECI's rulemaking challenge on its merits. DOE urges us to affirm the district court or, in the alternative, to affirm the result on the grounds of laches or failure to join indispensable parties under Rule 19(b) of the Federal Rules of Civil Procedure. We affirm on the basis of the exhaustion doctrine.

The Domestic Crude Oil Allocation Program (the Entitlements Program), 10 C.F.R. § 211.67, promulgated pursuant to the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751, *et seq.*, was an effort to equalize the costs of crude oil for most United States refiners. Instituted in 1974, the Entitlements Program required refiners with more than their proportionate share of less expensive "old" domestic crude to purchase "entitlements" to refine the excess from those refiners that did not have access to their proportionate share of the less expensive crude. Refiners that were forced to rely on the more expensive foreign crude and on uncontrolled "new" domestic crude were thus compensated by refiners that had greater access to "old" domestic crude supplies. Cost differentials were minimized.

In 1976 the Federal Energy Administration (FEA) proposed a revision of the Entitlements Program, primarily because small refiners that relied heavily on foreign crude oil supplies were disadvantaged under the entitlements formula then in use. On February 17, 1976, a notice of proposed rulemaking to amend the Entitlements Program was issued. *See* 41 Fed.Reg. 7125 (February 17, 1976). In addition to other amendments of 10 C.F.R. § 211.67, the notice invited comments

as to whether the calculations under the program, if made as described above,

would accomplish effective cost equalization under the new proposed pricing structure, and as to whether the domestic receipts of upper tier crude oil *should be given a fixed advantage over receipts of imported crude oil in the calculations to preserve incentives for refining domestic crude oil.* 41 Fed.Reg. 7131 (February 17, 1976) (emphasis added).

The rule that was proposed in the notice of rulemaking made no mention of any fixed advantage or penalty and the provisions inviting comments did not propose any specific penalty. Comments were received through March 2, 1976, and a public hearing was held on March 2 and 3, 1976. On April 1, 1976, the FEA published the final rule which included the following provision:

> The price at which entitlements shall be sold and purchased shall be fixed by the FEA for each month and shall be the exact differential between the weighted average cost per barrel to refiners of old oil and of imported oil, *less 21 cents,* such costs to be equivalent to the delivered costs to the refinery. 41 Fed.Reg. 13905 (April 1, 1976) (emphasis added).

ECI, an interregional agricultural cooperative, was established on May 1, 1976, following its purchase of a refinery from Atlantic Richfield Company. ECI immediately began its participation in the Entitlements Program. Since it imported virtually all of its crude oil supplies, ECI realized a considerable financial gain under the Entitlements Program even with the $.21 per barrel disadvantage. ECI's incorporators did not comment on the penalty when it was proposed, nor did the company challenge the rulemaking procedure or its monthly allocation under the program until November 14, 1978. Two avenues of relief were open to ECI: it could have appealed the monthly entitlement notice, which set forth the number of entitlements to which each refiner was entitled, or it could have applied for exception relief to the $.21 penalty provision citing financial hardship. By 1978 economic conditions had apparently made the penalty burdensome to ECI and it began filing a series of appeals of monthly entitlement notices, alleging the rulemak-

ing deficiencies that are the basis for this lawsuit. These appeals were denied, but in April 1979 ECI was awarded exception relief from the penalty provision retroactive to October 1978, as provided in 10 C.F.R. § 205.10. From that time until the repeal of the $.21 penalty provision in August 1979, ECI was exempted from penalty. ECI then filed this action in December 1979, seeking relief from the penalty that it paid from May 1976 to October 1978. Its primary allegation was that the rule containing the penalty was promulgated without the special notice procedure mandated by 15 U.S.C. § 766(i)(1)(B) for rulemaking pursuant to the EPAA. *See generally Shell Oil Co. v. FEA,* 574 F.2d 512 (Em.App.1978).

■ It is now well established that this Court follows the familiar rule requiring exhaustion of administrative remedies. *Consumers Union of the United States, Inc. v. Cost of Living Council,* 491 F.2d 1396, 1399 (Em.App.), *cert. denied,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974); *City of New York v. New York Telephone Co.,* 468 F.2d 1401, 1402 (Em.App.1972). The doctrine provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). In determining whether to apply the exhaustion doctrine, a court must examine the purposes of the doctrine to see whether they would be furthered by application to the circumstances of the case. *Consumers Union,* 491 F.2d at 1399. The inquiry must also involve consideration of whether the particular administrative scheme involved would be benefitted by requiring exhaustion. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

■ Three policies are commonly found underlying the exhaustion doctrine. Exhaustion should be required (1) when the nature of the case suggests that a factual

record be developed prior to judicial review and that the issues would be more susceptible of judicial determination after being framed by the agency; (2) when the agency should be first to exercise its discretion or the agency's expertise would aid the court in its determination; and (3) when an agency could correct an error on its own volition obviating the need for judicial intervention altogether. *Id.* at 194, 89 S.Ct. at 1662; *Consumers Union*, 491 F.2d at 1399. *See also F.T.C. v. Standard Oil of California*, 449 U.S. 232, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980).

■ These policies, which reflect notions of efficiency and administrative autonomy basic to the exhaustion doctrine, have been commonly applied in two quite different contexts. *See McGee v. United States*, 402 U.S. 479, 484 n.6, 91 S.Ct. 1565, 1568 n.6, 29 L.Ed.2d 47 (1971); *McKart*, 395 U.S. at 194, 89 S.Ct. at 1662. The more familiar of the two involves the question of whether a party is *prematurely* resorting to the judiciary to resolve its dispute. *See id.* at 193, 89 S.Ct. at 1662; *Consumers Union*, 491 F.2d at 1398–1400. The other context, applicable in the case now before us, involves the question of whether a party, by failing to timely contest its rights in an available administrative forum, has forfeited its right to judicial review. *See McGee*, 402 U.S. at 483, 91 S.Ct. at 1568; *McKart*, 395 U.S. at 194, 89 S.Ct. at 1662. In this context, the court must weigh the interests that are jeopardized by the party's failure to exhaust its administrative remedies against the harsh impact when the exhaustion doctrine bars any judicial review. *McGee*, 402

U.S. at 484, 91 S.Ct. at 1568. *See also Montgomery v. Rumsfield*, 572 F.2d 250, 253 (9th Cir. 1978). At base is the inquiry into whether there is a governmental interest compelling enough to justify forfeiting judicial review. *McGee*, 402 U.S. at 485, 91 S.Ct. at 1569.

■ Of the three primary policies underlying the exhaustion doctrine, the first two are not implicated in the case now before us primarily because the issue raised is more legal than factual.[1] The third policy, however, is clearly applicable. The Court in *Consumers Union* suggested that if the circumstances are appropriate, this policy alone can form the basis for requiring exhaustion. *Consumers Union*, 491 F.2d at 1400. The policy of allowing an agency the opportunity to discover and correct its own errors has its roots in the more "practical notions of judicial efficiency." *McKart*, 395 U.S. at 195, 89 S.Ct. at 1663. When an administrative action is timely appealed through the administrative process, the courts may never have to intervene. *Id.* In the case now before us, the FEA might well have corrected the alleged rulemaking errors had the issue been raised in a timely manner. The FEA did deny ECI's appeals on this issue in late 1978, *see Consumers Union*, 491 F.2d at 1399, but this was 31 months after the $.21 penalty provision was adopted. A timely appeal might well have successfully resolved the problem.

Furthermore, the principle of administrative autonomy suggests that agencies should be given the first opportunity to correct their own errors. *McKart*, 395 U.S.

---

1. ECI contends that the exhaustion doctrine is inapplicable in a case such as this one in which only a legal issue is raised. While the presence of a legal issue may in many instances make the first two policies inapplicable, it does not necessarily impact similarly on the third policy. *See Consumers Union*, 491 F.2d at 1399–1400. An agency can correct its own improper rulemaking procedure—a legal matter—and obviate the need for judicial intervention. ECI's reliance on *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), is misplaced. The Court there noted that the first two policies did not apply in a case that raises a matter of statutory interpretation, *id.* at 197–

98, 89 S.Ct. at 1664–65, but made no similar finding with regard to the third factor. The Court refused to require exhaustion and based its decision primarily upon the fact that the litigant faced criminal charges and attendant harsh consequences if exhaustion were required. *Id.* at 197, 89 S.Ct. at 1664. The governmental interest was insufficient to outweigh the consequences for the litigant. *Id.* at 199, 89 S.Ct. at 1665. *Standard Oil Co. v. DOE*, 596 F.2d 1029 (Em.App.1978), cited by ECI, is a ripeness case and does not involve the application of the exhaustion doctrine in a similar context.

at 195, 89 S.Ct. at 1663. In fact, "the whole rationale of the exhaustion doctrine in the present context lies in purposes intimately related to the autonomy and proper functioning of the particular administrative system." *McGee*, 402 U.S. at 484 n.6, 91 S.Ct. at 1568 n.6. This is particularly true in the case of the administrative system at issue in this lawsuit. This Court has earlier found with regard to the Economic Stabilization Act that "Congress itself clearly indicated the need for fast consistent decisions with the [agency] permitted maximum flexibility." *New York Telephone*, 468 F.2d at 1404. ECI's late appeal frustrates this policy.

There are other substantial interests which favor application of the exhaustion doctrine in this case. Primary among these is the substantial hardship that a challenge of the alleged improper rulemaking procedure would create at this very late date. The mechanics of the particular administrative scheme involved, the Entitlement Program, make the relief requested nearly impossible to grant at this time. The program administered the private resources of participating refiners on a monthly basis. To recalculate ECI's claims for the 31 month period would not only be difficult to achieve, but it would have the effect of requiring substantial payments of private resources. Other parties are likely to make similar claims if the rulemaking procedure were found invalid, forcing a complete reconstruction of the entitlements. This administrative system could easily have corrected the alleged error and avoided the hardship had ECI made a timely challenge. "[T]he attempt to review a final order of an agency which deals with daily trading activity almost two years after the issue of the order on alleged procedural deficiencies in its promulgation does not commend itself to a court of equity and seems inexcusable . . . ." *Economou v. Butz*, 370 F.Supp. 361, 363 (S.D.N.Y.1974), *citing Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967).

To be sure, the exhaustion doctrine, when applied in this context, can be viewed as harsh. The lengthy delay, however, was caused solely by ECI. *Compare Consumers*

*Union*, 491 F.2d at 1399–1400. ECI had several avenues of relief open to it and ample opportunity to seek that relief. In fact, DOE granted ECI relief for the period in which it was most affected by the $.21 penalty provision. Furthermore, the nature of the alleged rulemaking violation cannot be viewed as substantial. Some notice was given and there was ample opportunity to comment on the proposal. *Compare Mobil Oil Corp. v. DOE*, 610 F.2d 796 (Em.App. 1979). ECI failed to comment at the time of the promulgation of the provision and failed to comment during the following 31 months. ECI simply could not have been seriously prejudiced by the alleged improprieties when it participated under the program for so long without raising the issue.

The nature of the circumstances in this case are such that ECI was required to exhaust its administrative remedies in a timely manner. It did not do so, and thus cannot maintain an action at this late date. This quite simply is a situation in which "a litigant's claims [have lost] vitality because the litigant . . . failed to contest [its] rights in an administrative forum." *McGee*, 402 U.S. at 483, 91 S.Ct. at 1568.

We need not reach the other issues raised by the parties in this appeal. The judgment of the District Court is affirmed.