**Murray ANDERSON et al., on behalf of themselves and others similarly situated, Plaintiffs-Appellees,**

**v.**

**John T. DUNLOP et al., Defendants-Appellants.**

**No. DC–14.**

Temporary Emergency Court of Appeals.

Oct. 10, 1973.

Certiorari Denied Jan. 7, 1974.

See 94 S.Ct. 871.

William C. White, Atty., U. S. Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson and Allen W. Hausman, Attys., Dept. of Justice, on the brief), for appellants.

Jerry S. Cohen, Washington, D. C. (Herbert E. Milstein, Michael D. Hausfeld, of Harold E. Kohn, P. A., Washington, D. C., on the brief), for appellees.

Robert G. Nunn, Jr., William H. Bode, Alan S. Novins, Lobel, Novins & Laymont, Washington, D. C., on the brief for amicus curiae, Independent Gasoline Marketers Council.

Before TAMM, Chief Judge, VAN OOSTERHOUT and HASTINGS, Judges.

VAN OOSTERHOUT, Judge.

This is a timely appeal by John T. Dunlop and the officers and members of the President's Cost of Living Council (hereinafter collectively referred to as CLC) from order of the United States District Court for the District of Columbia, filed August 24, 1973, granting plaintiffs a temporary injunction. The injunction restrains CLC from "in any way applying to Plaintiffs and the class Phase IV Oil Regulations, Subpart L; or in any way implementing or enforcing said regulations as they relate to Plaintiffs and the class." The named plaintiffs are Murray Anderson and Joseph J. Grish.

Anderson operates a service station at Waycross, Georgia, handling Texaco brand gasoline and products. Grish operates two service stations, one located in Frazer, Michigan, and the other in Sterling Heights, Michigan, both of which are employed in the business of retailing Marathon brand gasoline and products. Both plaintiffs are retailers of brand name gasoline of major gasoline suppliers pursuant to an agreement with the supplier.

Plaintiffs allege that they bring this action on behalf of themselves and a class which consists of all service station dealers selling retail gasoline under the brand name of a major gasoline supplier pursuant to agreement with such supplier. It is asserted the class consists of about 165,000 members.

Jurisdiction of the District Court is based upon § 211(a) of the Economic Stabilization Act of 1970 as amended [1] hereinafter called the Act. Our jurisdiction is founded on § 211(b) of the Act.

This court on motion of CLC, resisted by plaintiffs, granted a stay of the District Court order granting the temporary injunction, observing that such ac- tion in no degree reflects a decision on the merits and that the stay is solely to maintain the status quo until a hearing on the merits of the appeal may be had. The hearing upon the appeal was advanced to September 17, 1973, and an accelerated briefing schedule was established and followed. Application of plaintiffs to the Chief Justice and subsequently to Mr. Justice Rehnquist to vacate our stay order was denied. We deferred consideration of plaintiffs' motion to reconsider our stay order until hearing on the merits on September 17. Oral arguments on the appeal were made on September 17, 1973, and the case was submitted.

Plaintiffs do not challenge the validity of the Price Stabilization Act nor do they question the right of the President under the executive orders he issued to delegate to CLC the powers conferred upon him to regulate the price of crude oil and petroleum products.

Plaintiffs in brief state that their attack is confined to final Phase IV regulations, Subpart L. The gist of plaintiffs' contentions as evidenced by their complaint and brief is that the Phase IV, Subpart L regulations, as applied to plaintiffs and their class are arbitrary and capricious and are invidiously discriminatory, in violation of the Fifth Amendment.

Plaintiffs do not sell propane, No. 2 fuel oil, diesel fuel, or natural gas derivatives. The only regulated product they sell is gasoline. As retailers of gasoline, their markup is controlled by § 150.352, Phase IV regulations, Subpart L. Such section provides that the ceiling price of a retailer for a particular octane of gasoline at a particular retail outlet shall be the weighted unit average cost of the seller's inventory of that item on August 1, 1973, plus the actual markup applied by the seller at that outlet to the actual cost of gasoline on January 10, 1973, except that in no event shall the seller be required to use a markup of less than 7.00 cents a gallon in comput-

---

1. P.L. 91–379 as amended by P.L. 93–28, April 30, 1973, and P.L. 92–210, December 22, 1971.

ing a selling price. Thus retailers who had a markup of more than 7.00 cents a gallon on January 10, 1973, were permitted to use such markup in computing their selling price, while retailers who because of a price war or for other reasons, had a markup of less than 7.00 cents a gallon on January 10, 1973, were permitted to use a 7.00 cents per gallon markup.

Plaintiffs assert that said regulation is discriminatory because it does not permit them to pass through increases in production costs since August 1, 1973, or increases in non-product costs such as rent, labor, insurance and maintenance. Plaintiffs also assert that they are the only retailers under Phase IV who are not allowed to pass through increases in product and non-product costs while their refiner suppliers may pass on their increased costs, and may do so through retail stations operated by the refiners, and thus receive preferential treatment. Complaint is also made that plaintiffs are discriminated against by not permitting them the small business exemption allowed generally to employers of less than sixty persons.

The trial court heard the temporary injunction application upon affidavits filed by the parties. The trial court's memorandum opinion reflects that it granted the injunction upon the basis of its conclusion of law, based upon its fact finding, that Subpart L of the Phase IV regulations as applied to the plaintiffs and their class are arbitrary and discriminatory and bear no rational relationship to the objective sought to be obtained by the Act and the Phase IV regulations, and that the regulations violate the due process clause of the Fifth Amendment.

Plaintiffs urge that the court's findings are based on undisputed facts. We disagree. CLC has filed extensive affidavits in the trial court in support of its contention that the regulations attacked are within the powers conferred upon the President by the Act and delegated to CLC, and that the regulations are reasonable and appropriate to accomplish the objective of the Act.

CLC states that the order granting the temporary injunction should be reversed by reason of errors committed by the trial court in the following respects:

1. Failure to require plaintiffs to exhaust available administrative remedies.

2. Failure to satisfy basic requirements for granting injunctive relief.

3. Finding that Subpart L regulations are violative of the due process clause of the Fifth Amendment.

4. Finding the individual plaintiffs properly represented a class consisting of some 165,000 independent retailers of brand name gasoline products.

For reasons hereinafter stated, we find that the plaintiffs have failed to exhaust available administrative remedies and that the order granting the temporary injunction should be reversed on that ground. Since such ruling is dispositive of this appeal, we do not reach nor express any view upon the other issues raised by CLC.

■ This court has squarely held in City of New York v. New York Telephone Co., 468 F.2d 1401 (Em.App. 1972), that the well-established doctrine of exhaustion of administrative remedies applies to actions arising under the Economic Stabilization Act. The reasonableness and logic of such holding is clearly demonstrated in Chief Judge Tamm's opinion in that case and need not be repeated here. In City of New York, we held:

"Clearly then, in light of the policy considerations and the legislative history, exhaustion is required in the context of this proceeding unless we find the administrative remedy provided inadequate." 468 F.2d 1401, 1404.

■ We are satisfied that an adequate administrative remedy is available. Section 207(b) of the Act provides:

"(b) Any agency authorized by the President to issue rules, regulations,

or orders under this title shall, in regulations prescribed by it, establish procedures which are available to any person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from, such rules, regulations, and orders. If such person is aggrieved by the denial of a request for such action under the preceding sentence, he may request a review of such denial by the agency. The agency shall, in regulations prescribed by it, establish appropriate procedures, including hearings where deemed advisable, for considering such requests for action under this section:
\* \* \* "

CLC, in conformity with the foregoing statutory direction, has in the Phase IV procedural regulations, 38 F.R. 21985, provided in § 155.41 to .43, a reasonable procedure for applying for individual or class exception, and in § 155.61 to .63, has provided procedures for applying for exemption or re-classification.

Charles Owens, administrator of the mandatory oil control program, in his affidavit filed in the trial court states that CLC has provided special procedures for expeditious consideration of individual claims for relief from the regulations to prevent serious hardship or inequities and has also provided for extensive monitoring of the entire retail gas system, and that plaintiffs have not requested an exception.

In Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), the Court holds:

" \* \* \* no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."

In Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767–768, 67 S. Ct. 1493, 1500–1501, 91 L.Ed. 1796 (1947), the Court holds:

"The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own, whether or not when it has been rendered they may intervene either in presumed accordance with Congress' will or because, for constitutional reasons, its will to exclude them has been exerted in an invalid manner. To do this not only would contravene the will of Congress as a matter of restricting or deferring judicial action. It would nullify the congressional objects in providing the administrative determination. In this case these include securing uniformity of administrative policy and disposition, expertness of judgment, and finality in determination, at least of those things which Congress intended to and could commit to such agencies for final decision."

In *City of New York*, we stated:

"Concepts of administrative autonomy also require that the Commission be given an opportunity to discover and correct its own errors. In this respect we have noted in our cases to date a healthy trend towards amendment of regulations when error or oversight has been pointed out to the Commission. Such autonomy lends itself to prompt, consistent price control policies which are essential to the administration of a nationwide program of price control. Finally, frequent deliberate skirting of the Commission may well result in an erosion of effectiveness and public confidence in the Commission which we must recall is a 'collaborative instrumentalit[y] of justice.' "

Such language has special application to the petroleum situation here involved. Petroleum prices were not significantly controlled in the early phases of price control. When it became apparent that the nation's supply of crude oil was inadequate to meet the nation's needs, the price of petroleum products began to rise rapidly. In fixing prices, it was determined that consideration had to be given to the necessity of importing foreign crude oil which commanded higher prices than domestic crude and to offer price incentives which would encourage new domestic production. Detailed studies were made by experts in the full spectrum of the petroleum industry and reports were received and considered by CLC. Public notice was given of proposed regulations and opportunity was afforded interested parties to express their views. The plan adopted imposed a ceiling on crude oil and upon the retail price of gasoline and other petroleum products. The preamble to the Phase IV Subpart L regulations sets forth at length the reason for imposing ceilings on crude oil and products derived therefrom, and the procedure followed in fixing ceilings at the refinery and retail levels. Included therein is the following statement:

"The Council intends to monitor the ceiling prices of gasoline, No. 2 heating oil and No. 2–D diesel fuel and will make periodic upward adjustments in the ceiling prices for those products to account for increased cost of imports and of domestic crude."

Plaintiffs in their petition allege only by way of conclusion that they have exhausted all administrative remedies. No proof was offered that they have done so. The trial court made no finding on the exhaustion of remedies issue but instead determined "requiring plaintiffs to exhaust their administrative remedies would result in irreparable harm, in that in this case, time is crucial to protect the rights of plaintiffs and the class."

We hold that adequate administrative remedies were provided by the Act and regulations. There is no basis in the record for determining that application to CLC for exception, reclassification, or exemption would not receive fair consideration.[2]

The exhaustion of remedies point was presented in the trial court by CLC by motion to dismiss. As we determined in *City of New York,* the Act requires exhaustion of available adequate administrative remedies before resort to the courts is available. No factual basis here exists which would warrant a departure from the well-established rule that administrative remedies should be exhausted before resort to the courts. The order granting the preliminary injunction is reversed and the case is remanded to the trial court with directions to dismiss by reason of plaintiffs' failure to exhaust available administrative remedies.

Reversed and remanded.

**2.** We note that subsequent to the trial court's order, Dr. Dunlop in his news letter of September 14, 1973, announced that all retail dealers in gasoline and other petroleum products were asked to supply information on forms provided as to their prices, costs and margins on specified dates, and the further statement was made that on the basis of such information and information independently gathered by CLC and its monitoring program, the CLC will act promptly to make appropriate upward adjustments in ceiling prices. On September 28, 1973, an announcement was made by CLC of the revision of retail ceiling prices and the method of computing them with respect to gasoline which would result in increases ranging from 1 cent to 2½ cents per gallon. Such ceiling increases apparently do not meet all of the plaintiffs' objections to the gasoline ceiling regulations and thus render the case moot, but does give further support to the view that applications for relief because of inequities or hardship would receive fair consideration.