TEMPLETON'S SERVICE, INC. a Michigan Corporation, et al., Plaintiffs,

v.

MOBIL OIL CORPORATION, a New Jersey Corporation, Defendant.

Civ. A. No. 5–70709.

United States District Court,
E. D. Michigan, S. D.

Oct. 16, 1975.

Eugene Driker, Barris, Sott, Denn & Driker, Detroit, Mich., Jerry S. Cohen, Michael D. Hausfeld, Washington, D. C., Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

Delmer C. Gowing, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich, for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This action presents the narrow issue whether plaintiffs who sue under the Emergency Petroleum Allocation Act of 1973 and charge a private party with violations of Federal Energy Administration (FEA) regulations are required first to exhaust administrative remedies.

Plaintiffs, four metropolitan Detroit retail gasoline dealers, allege that they had contracts with defendant Mobil Oil Corporation (Mobil) for the purchase of minimum and maximum amounts of gasoline under which Mobil gave them competitive allowances ranging from .5 cents to 1.5 cents per gallon for each gallon of gasoline sold at retail. Plaintiffs charge that, in violation of FEA guidelines, Mobil terminated the price allowances in effect on May 15, 1973 when it was required by law to maintain them. Plaintiffs seek treble damages, declaratory, and injunctive relief for the alleged violation.

Mobil moves to dismiss the complaint for plaintiffs' failure to exhaust admin-

istrative remedies, alleging that three of the plaintiff dealers have already filed complaints with FEA concerning Mobil's alleged unlawful practices, complaints which prompted FEA to issue notices of probable violation to Mobil. A fourth dealer, Templeton's Service, Inc., did not complain to FEA. Mobil's motion is bottomed on the theory that Congress, by incorporating certain provisions of the Economic Stabilization Act of 1970 into the Emergency Petroleum Allocation Act of 1973, also adopted the exhaustion requirements of the Economic Act.

In opposing the motion, plaintiffs urge that exhaustion is not required since they undertake no attack on the FEA regulations themselves, but merely seek an application of the regulations to the facts of this case as they later develop. Moreover, citing as examples the three plaintiffs who allegedly complained to FEA a year before filing suit, plaintiffs assert the futility of an exhaustion requirement as a condition precedent to suit in the district court.

The record for this motion consists of the pleadings, exhibits, and the affidavit of one Jerry S. Cohen which purports to demonstrate the frustration encountered in pursuit of an administrative remedy before the FEA. Although Mobil alleges that FEA has issued notices of probable violation in response to the complaints of three plaintiff dealers, the only documentary exhibits before the court are "information document requests" directed at Mobil with regard to the complaints. Mobil has produced no further evidence of FEA action on the complaints.

## I.

 The doctrine of exhaustion of administrative remedies provides generally "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[1] The doctrine applies most commonly where the relevant statute provides for the exclusivity of administrative procedures in order to avoid premature interruption of the administrative process and to permit an agency to apply a statute in the first instance.[2] Likewise, where Congress has committed certain functions or matters which require application of special expertise to the discretion of an agency, courts ordinarily defer to the agency at the outset.[3] The doctrine, however, is not without exceptions, and its application hinges upon the particulars of a given case. Accordingly, the court must examine the statute here involved, its legislative history, the adequacy of the administrative remedies provided, and other relevant authorities under the circumstances of this case.

## II.

The Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751–56, (Emergency Act) provides for enforcement machinery as follows:

" . . . sections 205 through 211 of the Economic Stabilization Act of 1970 (as in effect on November 27, 1973) shall apply to the regulation promulgated under section 753(a) of this title, [that section empowering the Executive to issue regulations providing for mandatory allocation of crude oil and petroleum products] to any order under this chapter, and to any action taken by the President . . . under this chapter, as if such regulation had been promulgated . . . under the Economic Stabilization Act of 1970."

*Id.* § 754(a).

Section 207 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note,

1. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

2. *McKart v. United States, supra* note, 395 U.S. at 193, 89 S.Ct. 1657.

3. *McKart v. United States, supra* note 1, at 194, 89 S.Ct. 1657.

(Economic Act) mandates the implementation of administrative procedures:

"Any agency authorized by the President to issue rules, regulations, or orders under this title shall, in regulations prescribed by it, establish procedures which are available to any person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from, such rules, regulations, and orders. If such person is aggrieved by the denial of a request for such action under the preceding sentence, he may request a review of such denial by the agency. The agency shall, in regulations prescribed by it, establish appropriate procedures, including hearings where deemed advisable, for considering such requests for action under this section . . . ."

Section 211 of the Economic Act gives the district courts exclusive jurisdiction of cases and controversies arising under the Act or the regulations or orders issued thereunder without regard to amount in controversy. Section 210 of the Act authorizes private suits for damages and other relief:

"Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may *bring an action in a district court of the United States*, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages."

◼ The language of the Economic Act, incorporated by Congress into the Emergency Act, does not define the interplay between administrative and judicial remedies. The private right of action afforded by section 210 is fettered only insofar as section 211 of the Economic Act limits the court's injunctive power, in actions attacking the regulations themselves, to situations where the administrative agency has first considered the challenge.[4] Thus, the statutory interdependent administrative and judicial remedies where a private party scheme provides for parallel rather than charges another with a violation of applicable regulations and does not question the regulations themselves.

◼ The legislative history of both the Emergency Act and the Economic Act is consistent with the foregoing analysis. The foremost Congressional concern in formulating the administrative procedure section of the Economic Act was a desire to provide a full and fair rulemaking process rather than to develop adjudicatory mechanisms for resolving disputes between private parties.[5] Congress expressed the same

4. ". . . no regulation of any agency . . . shall be enjoined or set aside, in whole or in part, unless a final judgment determines that the issuance of such regulation was in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth in section 706(2) of Title 5, United States Code . . . and no order of such agency shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." Section 211(d)(1). *See also id.* § 211(e)(1).

5. "Subsection 207(b) of the Economic Stabilization Act, as amended by this bill, is concerned with the desirability of issuing regulations or orders only after consultation with persons and organizations directly and substantially affected by the proposed regulation or order. . . .
"With respect to adjudications or orders concerning the rights of individuals, the agencies performing the functions authorized by the committee bill shall issue regulations *establishing procedures which are available* to any person for the purpose of seeking an interpretation of any regulation or order, and if such person is aggrieved by such interpretation, for seeking an exception or an exemption to such interpretation. . . .
"The committee felt that these requirements for administrative review were sufficient to insure that all interested persons were given an opportunity to participate in the development of these agency regulations and, if aggrieved by the operation of any of the regulations or orders of the agency, to

view when section 207 of the Economic Act was incorporated into the Emergency Act.[6]

At the same time, Congress manifested a desire to preserve a private right of action under both the Economic Act and the Emergency Act in unmistakable terms:

"Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering legal wrong to bring a treble damage action against a violator.

"This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one." [7]

The court concludes, therefore, that neither the Emergency Act nor its underlying legislative history require a private plaintiff to exhaust administrative remedies prior to suit against an alleged violator of applicable regulations.

### III.

The FEA has adopted regulations establishing the procedure for the filing and consideration of private complaints alleging violations of the price guidelines at issue in this suit. These procedural regulations provide that the FEA may initiate investigation of statements in a written, confidential complaint and solicit information from third parties or other sources.[8] After consideration of the complaint and other relevant information, the FEA may issue a notice of probable violation or remedial order for immediate compliance, determine that no violation has occurred or that a notice of probable violation or a remedial order would not be appropriate, or take such other action as it deems proper.[9]

Issuance of a remedial order is normally preceded by issuance of a notice of probable violation which commences FEA investigatory proceedings and affords an alleged violator a right of reply.[10] If a remedial order or a remedial order for immediate compliance is necessary, the order may require the violator to roll back prices, to refund amounts which exceed price regulations, or to take such other action as FEA deems necessary to eliminate or to compensate for a violation.[11] Any person to whom a remedial order is directed may file an administrative appeal, and any person who has appeared before the FEA in connection with a matter involving issuance of a notice of probable violation or remedial order has not exhausted his

---

be able to know how to complain and what to do about it. . . . "

S.Rep.No.92–507, 1971 U.S.Code Cong. & Admin.News, pp. 2283, 2290.

6. "In incorporating these provisions of the Economic Stabilization Act of 1970, as amended, the Committee intends to allow for the same administrative process and judicial review provided for regulations and orders issued under that Act. In relevant part, these sections make the provision of 553 of Title 5 of the United States Code (which encompass the informal rulemaking procedures of the Administrative Procedure Act) applicable to regulations and orders issued by the President under the authority of this bill. Separate standards for judicial review are applied. Orders are to be sustained if the President's findings are found to be support-

ed by substantial evidence. A regulation can be overturned if the court determines that the regulation exceeds the President's or his delegate's authority under this bill, is arbitrary or capricious or is otherwise unlawful under the criteria set forth in section 706(2) of Title 5 of the United States Code."
H.Rep.No.93–531, 1973 U.S.Code Cong. & Admin.News, pp. 2582, 2599.

7. S.Rep.No.92–507, 1971 U.S.Code Cong. & Admin.News, pp. 2283, 2291.

8. 10 C.F.R. § 205.180–85 (1975).

9. *Id.* § 205.185.

10. *Id.* § 205.191.

11. *Id.* § 205.194.

administrative remedies until an appeal has been filed.[12] Denial of an appeal is a final order of the FEA from which the appellant may seek judicial review.[13]

Whether the prescribed procedures are intended to afford plaintiffs in this case an administrative remedy is questionable. The regulations summarized above are violator, not complainant-oriented; the complainant plays a rather minor role in the investigatory scheme, chiefly that of "investigation-initiator." Moreover, the regulations are calculated to facilitate investigations of violations and to preserve certain rights of alleged violators not to promote a complainant's recovery in an action against the alleged violator.

██ Insofar as the regulations could be conceived to apply to plaintiffs in this case, the administrative remedy they afford is plainly inadequate. The regulations are shot through with discretionary powers accorded FEA which, although they provide FEA with maximum flexibility, produce a minimum of security for an aggrieved complainant who wishes speedy and certain resolution of his claim against an alleged violator. Because of the questionable applicability of the procedural regulations to the plaintiffs in this case and the inadequacy of the remedy they afford, the court concludes that they do not pose a bar to plaintiffs' suit in the district court.

## IV.

For the proposition that the Emergency Act requires exhaustion of administrative remedies, Mobil relies principally upon *City of New York v. New York Telephone*, Em.App., 468 F.2d 1401 (1972), and *Anderson v. Dunlop*, Em. App., 485 F.2d 666 (1973). *New York Telephone* was an action by the city against the phone company contesting an increase in the company's intrastate rates which increase, at the time of suit, was under active consideration by the Price Commission.

The Temporary Emergency Court of Appeals held that exhaustion was required under the Economic Act in the context of this proceeding to enable the Commission to make an adequate factual record and to apply its expertise.[14] The court observed that expertise was extremely helpful since the city sought an interpretation of one of the Commission's procedural rules and noted that suit was initiated while Commission action which could have mooted the City's complaints was pending. The court also found that the City had adequate administrative avenues open to them by way of procedures which permitted it to submit, and required the Commission to consider, data concerning any proposed price increase.

*Anderson* was an action by a class of retail gasoline dealers to enjoin application of the Cost of Living Council's regulations as arbitrary and unreasonable. The court followed *New York Telephone* in dismissing the suit, finding that, pursuant to established administrative procedures, the plaintiff class failed to seek an exception or exemption from the application of the regulations in question.[15]

To distinguish this case from the situations in *New York Telephone* and *Anderson*, plaintiffs rely on *Brennan Petroleum Products, Inc. v. Pasco Petroleum Co.*, 373 F.Supp. 1312 (D.Ariz. 1974), and *Gas-A-Tron of Arizona v. Union Retail Company of California*, 1 CCH Energy Management ¶ 9710 (D. Ariz.1974). In *Pasco*, two gasoline retailers sued their supplier under the Emergency Act alleging the defendant's improper determination of allocation fractions under FEA guidelines. In finding that plaintiffs were not required to exhaust administrative remedies, the

12. *Id.* § 205.195; 205.100.

13. *Id.* § 205.106(b).

14. 468 F.2d at 1402–04.

15. 485 F.2d at 668–70.

court distinguished *New York Telephone* as a case involving an attack on the regulatory program itself. The court observed that section 210 of the Economic Act was a specific grant of jurisdiction over private disputes without regard to administrative procedures and found no need to resort to the agency since plaintiffs only sought application of the allocation regulations to the facts at hand.[16] *Gas-A-Tron*, an action charging the defendant with wrongful refusal to allocate gasoline in violation of the Emergency Act, followed the approach taken in *Pasco* and distinguished *New York Telephone* and *Anderson* on similar grounds.[17]

■ The approach taken in *Pasco* and *Gas-A-Tron* to distinguish *New York Telephone* and *Anderson* should be used in this case. Plaintiffs here seek only an application of FEA's price regulations to the facts of this suit and do not in any way challenge the regulations themselves. There is need for no special agency expertise or input into the meaning of the price regulations at issue. With regard to the three plaintiffs who have complained to FEA, agency action, if any is forthcoming, is unlikely to moot the complaints.

### V.

In the light of the language and history of the act, the inadequacy of the administrative remedy to resolve claims of aggrieved claimants against alleged violators, and the sound distinction between suits that merely seek to apply the regulations rather than to challenge them, the court holds that plaintiffs here are not required to exhaust administrative remedies. Accordingly, Mobil's motion to dismiss is denied.

So ordered.

16. 373 F.Supp. at 1314–16.

17. 1 CCH Energy Management ¶ 9710, at 9742–43.