**HYDROCARBON TRADING AND TRANSPORT COMPANY, INC., Plaintiff,**

v.

**EXXON CORPORATION, Defendant.**

80 Civ. 2450(MEL).

United States District Court, S. D. New York.

April 7, 1981.

Collier, Shannon, Rill & Scott, Washington, D. C., Carl S. Levine, P. C., New York City, Bailey & Bailey, Houston, Tex., for plaintiff; William W. Scott, Washington, D. C., Mark L. Austrian, New York City, John B. Williams, Washington, D. C., William G. Bailey, Houston, Tex., of counsel.

Albert P. Lindemann, Jr., Kenneth M. Bialo, New York City, Robert L. Norris, Barbara Finney, Houston, Tex., Miller & Chevalier, Donald B. Craven, Jay L. Carlson, Stuart M. Bluestone, F. Shaun Burns, Washington, D. C., for defendant.

LASKER, District Judge.

In 1978, Hydrocarbon Trading and Transport Company, Inc. ("Hydrocarbon") and Exxon Corporation ("Exxon") participated in exchanges of unlike petroleum products: Exxon supplied Hydrocarbon with 300,000 barrels of motor gasoline in exchange for 300,000 barrels of No. 2 fuel oil. In this suit, Hydrocarbon claims that the Mandatory Petroleum Allocation Regulations, 10 C.F.R. Part 211, promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.*, required Exxon to continue to supply Hydrocarbon with the same quantity of motor gasoline as during the "base period" of 1978. Hydrocarbon moves for summary judgment as to liability. Exxon moves (1) for a stay of these proceedings until ten days after resolution of pending Department of Energy ("DOE") administrative enforcement proceeding involving the same transactions and raising the same issue; or (2) for joinder of DOE as a party to this suit under Fed.R. Civ.Pr. 19(a), and (3) to defer consideration of Hydrocarbon's motion for partial summary judgment until Exxon has been allowed the discovery which it claims is necessary to answer Hydrocarbon's motion.

## I.

*The Pending Administrative Proceeding*

On March 23, 1979 Hydrocarbon filed with the Office of Special Counsel ("OSC"), (the investigative office of the DOE responsible for auditing major refiners and initiating administrative enforcement proceedings) an administrative complaint making the same claims as in this suit. On May 16, 1979 the OSC served Exxon with an Interim Remedial Order for Immediate Compliance ("IROIC") which stated that the 1978 product exchanges between Hydrocarbon and Exxon had created a supplier/purchaser relationship obligating Exxon to continue supplying Hydrocarbon with the same quantity of gasoline under the applicable regulations. On June 18, 1979 the Office of Hearings and Appeals ("OHA"), the quasi-judicial body of the DOE which conducts departmental enforcement proceedings, granted Exxon's application for a stay of the IROIC on the ground that the IROIC "contained insufficient findings" that Hydrocarbon would be irreparably harmed without the order. However, the OHA did state that "there is a strong possibility that Exxon's refusal to supply [Hydrocarbon] was a violation of 10 C.F.R., Part 211." *Exxon Company, U.S.A.*, 3 DOE ¶ 82,069, at 82,694 (1979). OHA remanded the case to OSC for more specific findings as to the

irreparability of Hydrocarbon's injury. On August 15, 1979, the matter was dismissed by OHA, at the request of OSC.

Hydrocarbon served the complaint in this suit on May 1, 1980. Shortly thereafter, on May 9, 1980 OSC reinstituted administrative enforcement proceedings against Exxon with respect to Exxon's supply obligation to Hydrocarbon by issuing a Proposed Remedial Order which serves to initiate the adjudicatory administrative enforcement proceeding before OHA. On September 24, 1980, Exxon filed a Statement of Objections to the Proposed Remedial Order and moved for discovery and an evidentiary hearing. Other major oil refiners have also submitted Statements of Objection to the Proposed Remedial Order. Exxon contends there, as here, that the applicable regulations should not be construed to create supply obligations on the basis of unlike product exchanges because such an interpretation 1) would render unlike product exchanges unworkable, 2) would be impermissibly retroactive, and 3) would be unlawful because of DOE's failure to comply with applicable rulemaking procedures and to consider relevant statutory objectives. In any event, Exxon contends, it was not obliged to supply Hydrocarbon with motor gasoline because Hydrocarbon never made an offer of No. 2 oil to Exxon during the relevant periods.

Over Exxon's objection, in December, 1980, OHA granted Hydrocarbon's request to participate in the pending proceeding before OHA "as a party for all purposes." Decision and Order of DOE, Case No. BEX–0124, December 12, 1980. If OHA should issue a Remedial Order, Exxon would be entitled to review by the Federal Energy Regulatory Commission ("FERC"), also a component of DOE. 42 U.S.C. § 7193(c); 10 C.F.R. § 205.199C; 18 C.F.R. § 1.38. The FERC decision could then be appealed to a federal district court and subsequently to the Temporary Emergency Court of Appeals. Section 211 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904, note *incorporated in* Section 5(a) of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754(a).

## II.

### *The Doctrine of Primary Jurisdiction*

■ Exxon's motion for a stay is based on the doctrine of primary jurisdiction that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). The doctrine is intended to accommodate "the complementary roles of courts and administrative agencies," *Far East Conference v. United States,* 342 U.S. at 575, 72 S.Ct. at 494, by serving to

"... avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court. Under the doctrine, a court should refer a matter to an administrative agency for resolution, even if the matter is otherwise properly before the court, if it appears that the matter involves technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise." *MCI Communications Corp. v. American Telephone & Telegraph Co.,* 496 F.2d 214, 220 (3d Cir. 1974).

The factors to be considered in determining whether to apply the doctrine are 1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise, 2) whether the question at issue is peculiarly within the agency's discretion, 3) whether there exists a substantial danger of inconsistent rulings, and 4) whether a prior application to the agency has been made. *Orange & Rockland Utilities, Inc. v. Howard Oil Co.,* 416 F.Supp. 460, 466 (S.D. N.Y.1976).

Exxon contends that this action should be stayed under the doctrine because substantial issues of regulatory policy requiring the agency's expertise are involved in deciding whether the applicable regulation, 10 C.F.R. § 211.9(a)(1), should be interpreted to encompass unlike product exchanges. Exxon emphasizes that the pending administrative proceeding presents a case of first impression for OHA, *see Chevron, U.S.A. Inc.*, 5 DOE ¶ 83,007 at 86,050 n.3 (1980), and that OHA is not bound by decisions of other offices within the agency, *see United Refining Co.*, Case No. BEA–0361 (August 21, 1980), slip op. at 13. Exxon argues that since the supplier/purchaser rule applicable to *crude* oil, 10 C.F.R. § 211.63(b), specifically mentions product exchanges while the rule applicable to *refined* oil, 10 C.F.R. § 211.9(a)(1), does not, the proper interpretation of § 211.9(a)(1) (according to Exxon) is not clear and depends on a thorough analysis of the impact that such a construction would have on fulfillment of the agency's statutory and regulatory objectives. Exxon further contends that the DOE proceeding is at an advanced stage while this action cannot proceed until various discovery matters are decided. Finally, Exxon claims that the danger of inconsistent rulings is great in this case and that, accordingly, as in *Orange & Rockland Utilities v. Howard Oil Co.*, 416 F.Supp. 460 (S.D.N.Y. 1976), the action should be stayed until the agency has determined the regulatory questions raised.

Hydrocarbon responds that the doctrine of primary jurisdiction does not dictate a stay in the circumstances because the issues turn on the straightforward application of § 211.9(a)(1) rather than any complex factual or regulatory analysis. Section 211.9(a)(1) provides that

> "Each supplier of an allocated product shall supply all wholesale purchaser-resellers and all wholesale purchaser-consumers which purchased or obtained that allocated product from that supplier during the base period as specified in subparts D through K of this part."[1]

According to Hydrocarbon, the phrase "purchased or obtained" clearly encompasses unlike product exchanges. It supports its position by reference to other regulations defining the terms used in § 211.9(a)(1). *E. g.*, § 211.10(b)(2)(ii) (base period volume defined in terms of volume "purchased or obtained"); § 211.12(c) (supply obligation defined in terms of volume of product "sold or transferred"); § 211.51 ("wholesale purchaser-reseller" defined as "any firm which purchases, receives through transfer, or otherwise obtains (as by consignment) an allocated product ... ").

Hydrocarbon also disputes Exxon's claim that the OHA proceeding has progressed to a significantly advanced stage and argues that undue delay will result if the adjudication here is stayed until final agency determination of the issues. Hydrocarbon emphasizes that Exxon has sought discovery and a hearing in the agency proceeding as well as here. Moreover, Hydrocarbon contends that the OHA proceeding was not pending when it filed this suit and that, in any event, Hydrocarbon has a clear right under *Bulzan v. Atlantic Richfield Co.*, 620 F.2d 278 (Em.App.1980) to prosecute this action despite the existence of administrative remedies.

Finally, Hydrocarbon argues that inconsistent rulings by the agency and the court are unlikely because each branch of the DOE which has considered the question has concluded that unlike product exchanges give rise to continuing supply obligations, and the OSC has issued a formal interpretation construing § 211.9(a)(1) to that effect. See Interpretation 1980–39, 45 Fed.Reg. 76045 (November 17, 1980). According to Hydrocarbon, OHA has only enforcement, not rulemaking authority and thus the OHA proceeding will not definitively determine the complex interpretative issues which Exxon asserts are presented in this case. In short, Hydrocarbon contends that, unlike *Orange & Rockland, supra*, here the agency has already expressed its expertise

---

1. This regulation is no longer in effect pursuant to Executive Order 12287, 46 Fed.Reg. 9909 (January 30, 1981), decontrolling crude oil and refined petroleum products.

on these issues by concluding that unlike product exchanges are encompassed within § 211.9(a)(1).

\* \* \* \* \* \*

■ Decision on Exxon's motion for a stay is reserved. Hydrocarbon has demonstrated that significant delay will result if resolution of this suit awaits final agency action in the pending OHA proceeding. As the agency history to date reveals, Hydrocarbon has yet to receive a definitive agency ruling in this case despite the fact that it first complained to DOE over two years ago and despite the fact that DOE has thus far apparently agreed with Hydrocarbon on the merits. Moreover, OHA officials have advised us directly, on inquiry of which counsel were informed, that its proceedings are estimated to last approximately six months longer. As noted above, the loser would be entitled to appeal the OHA decision, to FERC, a federal district court, and the Temporary Emergency Court of Appeals. And while Exxon and Hydrocarbon disagree whether the DOE proceeding was pending when this suit was instituted, it is clear that Hydrocarbon need not exhaust its administrative remedies before prosecuting this private action. *Bulzan v. Atlantic Richfield Co., supra.*

The delay resulting from a stay may be justifiable in cases involving complex and ambiguous administrative regulations where the agency has not yet had an opportunity to construe the particular regulation, *e. g., Orange & Rockland Utilities, supra.* Here, however, Hydrocarbon has made a strong showing that the applicable regulation, § 211.9(a)(1), is clear and unambiguous and that every branch of DOE which has considered the question has concluded that unlike product exchanges are covered by the regulation. If Hydrocarbon is correct, then the application of § 211.9(a)(1) in the circumstances of this case would not require any special expertise which the agency may possess and, in any event, the agency would already have made its preliminary, though not final, interpretation of the regulation. For the same reasons, the risk of inconsistent judgments would not be substantial.

Moreover, even in the event that inconsistent rulings did rresult, both this action and the agency action would ultimately be appealable to the Temporary Emergency Court of Appeals, and as that court has indicated, the risk of inconsistent judgments can be reduced or eliminated by

" . . . an amicus curiae appearance by the DOE, permissive intervention by the agency pursuant to Rule 24(b), Fed.R. Civ.P., nonparty discovery, and the adjustment of a court's liability award so as to take into account a prior or subsequent DOE remedial order." *Bulzan v. Atlantic Richfield Co., supra,* 620 F.2d at 283–284. (footnote omitted)

Against these considerations, Exxon contends that a stay is appropriate because the interpretation of § 211.9(a)(1) requires a complex analysis of relevant statutory and regulatory objectives. However, Exxon has made no showing to support the proposition that unlike product exchanges are not covered by the plain words of § 211.9(a)(1) or that the agency has not consistently construed the regulation to encompass such exchanges. In light of the delay inherent in the application of the doctrine of primary jurisdiction, this suit should not be stayed on the bare assertion that agency expertise is required to decide the disputed issue. A court should not reflexively defer to a pending administrative proceeding where the issue presented does not on its face involve "technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise." *MCI Communications Corp. v. American Telephone & Telegraph Co.,* 496 F.2d 214, 220 (3d Cir. 1974).

Because Exxon has not yet submitted papers in opposition to Hydrocarbon's motion for partial summary judgment, there is no way to decide whether its contention that the interpretation to be accorded § 211.9(a)(1) depends upon an analysis of complex regulatory issues is correct and consequently it is impossible to determine at this time whether a stay would be useful. Accordingly, decision on Exxon's motion for a stay is reserved until it answers Hydrocarbon's motion for partial summary judgment. If it appears "after the issues have

been crystallized ... [that] the [DOE] has special expertise," *United States v. American Telephone & Telegraph Co.*, 461 F.Supp. 1314, 1329 (D.D.C.1978), or that there is a substantial risk of inconsistent decisions, appropriate relief can then be granted.

## III.

### *Joinder of the Department of Energy*

■ Exxon contends that if this action is not stayed DOE should be joined as a party under Fed.R.Civ.Pr. 19(a) to prevent Exxon from being subjected to a substantial risk of inconsistent obligations. However, the Temporary Emergency Court of Appeals in *Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 566 (1979) specifically rejected this basis for joining DOE as a party to private litigation. Exxon argues that the decision in *Dyke* was premised on the understanding that as an alternative to joinder of the agency in the judicial proceeding, the doctrine of primary jurisdiction would be applied. The contention is not persuasive. *Dyke* did not compel joinder of DOE under Rule 19(a) whenever the doctrine of primary jurisdiction is not applied. To the contrary, the court there stated that, in view of the possibility that DOE's joinder in a private lawsuit may serve to estop DOE from independently deciding the administrative proceeding, a general rule permitting such involuntary joinder would be inconsistent with the independent private and administrative enforcement devices which Congress has established. In short, according to *Bulzan, supra*, the Court in *Dyke* "held that the DOE cannot be required to be a party to a private suit under section 210, unless there are compelling circumstances which necessitate the agency's involvement." *Bulzan, supra*, at 282–83. Since Exxon has presented no compelling circumstance to justify the joinder, its motion to join DOE as party is denied.

## IV.

### *Deferral of Consideration of Partial Summary Judgment Motion Pending Completion of Discovery*

■ Exxon contends that DOE's recent, nonfinal pronouncements interpreting § 211.9(a)(1) to encompass unlike product exchanges are inconsistent with the alleged contemporaneous construction accorded § 211.9(a)(1) by DOE and the industry from the time the regulation was promulgated until the agency's recent pronouncements. According to Exxon, it is entitled to conduct discovery to establish that DOE's recent, *post hoc* interpretation of the regulation is not entitled to deference because of its inconsistency with the earlier contemporaneous construction.

Hydrocarbon argues that discovery on the nonpublic contemporaneous construction accorded a regulation by an administrative agency is permissible only where the agency seeks to apply a new regulation retroactively and that it is not justifiable where, as here, the same regulation has been in effect through the relevant period and the agency's subsequent pronouncements have simply served to clarify the regulation. Hydrocarbon adds that because the regulation is clear and has been consistently construed by DOE to encompass unlike product exchanges, the discovery Exxon seeks is irrelevant.

Exxon's motion to defer consideration of Hydrocarbon's motion for partial summary judgment is denied. Hydrocarbon's motion presents the narrow legal issue whether § 211.9(a)(1) required Exxon to continue to supply Hydrocarbon with motor gasoline on the basis of the 1978 unlike product exchanges between Exxon and Hydrocarbon. While Hydrocarbon's contention that contemporaneous construction discovery is only permissible in the context of retroactively applied regulations is open to question, *see, e. g., Standard Oil Company v. Department of Energy*, 596 F.2d 1029, 1055–56 (Em.App. 1978), it is clear, as Hydrocarbon argues, that the agency's contemporaneous construction of a regulation is only relevant if "the regulations are ambiguous on their face," *Standard Oil, supra* at 1055, and a party "relies on an after the fact interpretation" by the agency, *Standard Oil, supra* at 1056. As noted above, Hydrocarbon has

made a strong showing that the regulation is clear on its face and has been consistently construed by DOE to cover unlike product exchanges. If Hydrocarbon is correct, then the discovery which Exxon seeks would be irrelevant.

In these circumstances, Hydrocarbon ought not be subjected to the delay inherent in the discovery process unless Exxon establishes that such discovery would be relevant by demonstrating that the regulation does not by its plain words render Exxon liable and that DOE has not construed the regulation to encompass unlike product exchanges prior to the relevant transactions. If Exxon is able to make such a showing in its opposition to Hydrocarbon's motion for partial summary judgment, the discovery Exxon seeks would then be appropriate to determine whether deference should be accorded the agency's recent interpretation of § 211.9(a)(1).

\* \* \* \* \* \*

In sum, decision is reserved on Exxon's motion for a stay, Exxon's motion to join DOE as a party is denied, and Exxon's motion to defer consideration of Hydrocarbon's motion for partial summary judgment is denied. Exxon shall submit its papers in opposition to Hydrocarbon's motion within fifteen (15) days of the date of this decision.

It is so ordered.